**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued:  November 2, 2015        Decided: September 12, 2016)

Docket Nos. 14-3721-cv, 14-3771-cv, 14-3811-cv

_____

REBECCA MONTESA, individually and as a parent and natural guardian of C.W., E.W. and N.W., infants, MARIE JEAN BAPTISTE, individually and as a parent and natural guardian of PJB, DJB, and DJB, infants, ISRAEL MEDIUA, individually and as a parent and natural guardian of H.M., infant, MARC E. DORSANVIL, individually and as a parent an natural guardian of M.D. and N.D., infants, MARTINE NARCISSE, RONALD ROSEMOND, individually and as a parent and natural guardian A.L., infant, MARLENE ISRAEL, individually and as a parent and natural guardian of B.I. 1 and B.I. 2, infants, KERLINE LOUIS, individually and as a parent and natural guardian of KL and RL, infants, YOLENE HIPPOLYTE, individually and as a parent and natural guardian of I.H. 1, I.H. 3 and R.H., infants, MARIE SOMISE LOUIS, individually and as a parent and natural guardian of S.L., infant, KRYSTAL WILSON, individually and as a parent and natural guardian of E.W. and M.E., infants, PAUL ROONEY, individually and as a parent and natural guardian of DR, and JR, infants, NASIK ELAHI, individually and as a parent and natural guardian of K.E. and S.E., infants, DONIQUE JOHNSON, individually and as a parent and natural guardian of D.J., infant, BETTY CARMAND, individually and as a parent and natural guardian of D.E, J.E., and S.E., infants, ROSENAY JACQUES, individually and as parents and natural guardians of J.J., C.J., and A.L., infants, ELZA JACQUES, individually and as parents and natural guardians of J.J., C.J., and A.L., infants, LANA RHEUBOTTOM, individually and as a parent and natural guardian of J.R,, infant, HIRAM RIVERA, individually and as a parent and natural guardian of A.R. and T.R., infants, STEVEN WHITE, individually, collectively and as parents and natural guardians of A.W., infant, EMILIA WHITE, individually, collectively and as parents and natural guardians of A.W., infant, RAMONA JONES, individually and as a parent and natural guardian of Y.J., E.J., G.J., and T.J., infants, WILMA GLOVER-KOOMSON,

individually and as a parent and natural guardian of F.K., infant, YOLANDA WHITE, CHRISTOPHER MESIBOV, individually and as parents and natural guardians of J.M. 1, and J.M. 2, infants, DONNA MESIBOV, individually and as parents and natural guardians of J.M. 1, and J.M. 2, infants, ALFRED COLE, individually and as a taxpayer residing within the East Ramapo Central School District, ROBERT MALEBRANCHE, individually and as a taxpayer residing within the East Ramapo Central School District, LORRAINE ALCIMAS, individually and as a taxpayer residing within the East Ramapo Central School District, IREUS REGINAL, individually and as a taxpayer residing within the East Ramapo Central School District, EMMANUEL ALEXIS, individually and as a taxpayer residing within the East Ramapo Central School District, OVID COLAS, individually and as a taxpayer residing within the East Ramapo Central School District, KIM FOSKEW, LENTZ EUGENE, individually and as a taxpayer residing within the East Ramapo Central School District, LENARD SAINVIL, individually and as a parent and natural guardian of C.B. and W.B., infants, FRANKY SANVIL, individually and as a taxpayer residing within the East Ramapo Central School District, ADOLFINA MARTINEZ, individually and as a parent and natural guardian of C.M. and E.M., infants, MONESE THEODORE, individually and as a parent and natural guardian of R.T., infant, LANA AUGUSTE, individually and as a parent and natural guardian of SA, infant, LILANA WILSON-ORTA, individually and as parents and natural guardians of SW, and AO, infants, ANTHONY ORTA, individually and as parents and natural guardians of SW, and AO, infants, KIMBERLY COLLICA-FOX, individually and as a parent and natural guardian of A.C. and R.C., infants, MALLORY JOHNSON, individually and as a parent and natural guardian of A.L., infant, BEVERLY JONES, individually and as a parent and natural guardian of T.S., infant, KENICE HIBBERT, individually and as a parent and natural guardian of E.P., infant, LITIA HAGANS, individually and as a parent and natural guardian of D.C. and D.S., infants, BEVERLY PATTERSON WATSON, individually and as a parent and natural guardian of J.W., infant, FLAMBERT TELUSCA, individually, collectively and as parents and natural guardians of F.T. and S.T., infants, ENELLE PIERRE, individually and as a parent and natural guardian of C.P., J.P. and K.P., infants, ANNE CARMAND-LUNDI, individually and as a parent and natural guardian of A.S. and PL., infants, LEVY CAZEAU, individually and as a parent and natural guardian of T.C., infant, MARIE JOSY JEAN-BAPTISTE, individually and as a parent and natural guardian of HJB, JJB, and JJB, infants, ANNIE CRUDOP, individually and as a taxpayer residing within

the East Ramapo Central School District, JULIA THOMPSON, individually and as a taxpayer residing within the East Ramapo Central School District, KENNETH ISAACS, individually and as a taxpayer residing within the East Ramapo Central School District, Peter Sharpe, individually and as a taxpayer residing within the East Ramapo Central School District, FRANTZIE LAMARRE-CHAM, individually and as a parent and natural guardian of MC, MC, and MC, infants, DORIAN BUTCHER, individually and as a parent and natural guardian of S.B., infant, MARGARET TUCK, individually and as a parent and natural guardian of J.A., infant, REGINALDA BRUNO, individually and as a parent and natural guardian of S.A., infant, RETTVIE JOURDAIN, individually and as a parent and natural guardian of P.D., infant, MARIA FLORES-MARTINEZ, individually and as a parent and natural guardian of A.M., infant, PEARLINE WRAY, individually and as a parent and natural guardian of R.M., infant, SHARON PARKER, individually and as a parent and natural guardian of A.P., infant, BOILEAU MEHU, individually, collectively and as a parents and natural guardians of C.M., F.M. and K.M., infants, MARTHO FERDINAND, individually and as parents and natural guardians of WL and BL, infants, JEAN BERNADIN LAGUERRE, individually and as parents and natural guardians of WL and BL, infants, LAMARTINE LARAME, individually and as a parent and guardian of L.L. 1 and L.L. 2, infants, ETHENE LARAME, individually and as a parent and natural guardian of I.L., J.L. and R.L., infants, PATRICK JEANBAPTISTE, individually and as a parent and guardian of PJ JR., DJ and DPJ, infants, MARIE MATHELUS, individually and as a parent and natural guardian of A.M., infant, MARIE AURELUS, individually and as a parent and guardian of C.A. and J.A., infants, JEAN-RENE VICSAMA, individually and as a parent and natural guardian of F.V. and R.V., infants, LUCIENNE SAINT FORT, individually and as a legal guardian of D.P., H.R. and M.P., infants, VELLA MARDY-ARRE, individually and as a parent and natural guardian of R.M., infant, RONY JACQUES, individually and as a parent and natural guardian of M.J., T.J. and T.R.J., infants, LISA ROSS, individually and as a parent and natural guardian of DR, infant, LISA MEYERS, individually and as a parent and natural guardian of S.M., infant, GEORGES DELALEU, individually and as a parent and natural guradian of D.C., infant, BENITA GILES, individually and as a parent and a natural guardian of B.G., infant, PATRICIA COLLINS, individually and as a parent and natural guardian of J.C. and J.M., infants, DEMERUANT C. LOUISTHELMY, individually and as a parent and natural guardian of D.L., M.L., and R.L., infants, SERGO BEAUBOEUF, individually and as a parent and natural guardian of M.M.,

infant, JUNIE CLAUTAIRE, individually and as a parent and natural guardian of C.C., J.J. and T.C., infants, ADELE FORTUNE, individually, collectively and as parents and natural guardians of T.F., infants, JOCELIN NOEL, individually and as a parent and natural guardian of E.N. and J.N., infants, ROLAND ALEXANDRE, individually, collectively and as a parent and natural guardian of D.A., E.A. and Z.A., infants, PRESLER LOUIS-JUSTE, individually and as a parent and natural guardian of ELJ, and PLJ, infants, ANNA NARCISSE, individually and as a legal guardian of JF and AM, infants, HARVEY WILLIAMS, individually and as a legal guardian of M.A. and M.J., infants, JESULA AUGUSTE, individually and as a taxpayer residing within the East Ramapo Central School District, PIERRE DESROSIERS, individually and as a parent and natural guardian of C.D., infant, JULIETTE JEAN KERNOSAINT, individually, GEROLD ST. BRICE, individually, MICHELLE LARAME, individually and as a taxpayer residing within the East Ramapo Central School District, JERISON LORA, individually and as a taxpayer residing within the East Ramapo Central School District, MAGDA DESDUNES, individually and as a parent and natural guardian of O.D., infant, PATRICIA JOURDAIN, individually and as a taxpayer residing within the East Ramapo Central School District, DESHAWN PARKER, individually and as a taxpayer residing within the East Ramapo Central School District, RUSSELL BISHOP, individually and as a taxpayer residing within the East Ramapo Central School District, OSWALD DUBOIS, individually, COLIN GRANT, individually and as a taxpayer residing within the East Ramapo Central School District, KENNETH BOLT, individually and as a taxpayer residing within the East Ramapo Central School District, CHRIS BIBBINS, individually and as a taxpayer residing within the East Ramapo Central School District, JOANNE CHERIMOND, individually and as a taxpayer residing within the East Ramapo Central School District, MELVERLEEN BULLOCK, individually and as a parent and natural guardian of C.B., infant, CLEAVON BULLOCK, individually, ROBERT JAMES, individually and as a taxpayer residing within the East Ramapo Central School District, EDENS ZULME, individually and as a taxpayer residing within the East Ramapo Central School District, REBECCA ADJETEY, individually and as a taxpayer residing within the East Ramapo Central School District, RAYSHON RETTWAY, individually, MAGDA PIERRE-LOUIS, individually and as a taxpayer residing within the East Ramapo Central School District, TATIANA PIERRE-LOUIS, individually and as a taxpayer residing within the East Ramapo Central School District, MARIEE COMEAU, individually and as a taxpayer residing within the East Ramapo Central School

iv

District, AKA MARLEE COMEAU, GERALD CHEREMEANT, individually and as a taxpayer residing within the East Ramapo Central School District, ARTHUR MONDESTIN, individually and as a taxpayer residing within the East Ramapo Central School District, RAYSHON PETTWAY, individually and as a taxpayer residing within the East Ramapo Central School District, SYBIL BEACH EDWARDS, individually and as a parent and natural guardian of A.E., infant, ANTONIO MIGUEL, individually and as a parent and natural guardian of A.M., infant, JUDITH DESIR, individually and as a parent and natural guardian of J.S, infant, ENLUS VIERGELINE, VIERGELINE ENLUS individually and as a parent and natural guardian of GJ, MJ, infants, NAJA WILSON, individually and as a parent and natural guardian of ET, ET and ET, infants, DYNAA LATURE, individually and as a parent and natural guardian of D.D., infant, MINNIE WILSON, individually and as a parent and natural guardian of I.W., infant, FAMILLA EPPS, individually and as a parent and natural guardian of J.E., infant, PRUDENCE WRAY, individually and as a parent and natural guardian of NR and GM, infants, DONNA GARCES, individually and as a parent and natural guardian of S.G., infant, INGRID RENER, individually and as a parent and natural guardian of BE, and AE, and LE, infants, ODNY EUGENE, individually and as a parent and natural guardian of J.E., infant, JEAN R. MARSEILLE, individually, JADIA DORCELLY, individually, BADIO DOSSELAINE, individually, ROBERT BADIO, individually and as a taxpayer residing within the East Ramapo Central School District, PIERRE LOUIS CYNILLE, individually, MURIELLE GUERIN, individually and as a parent and natural guardian of M.G., infant, FERDILUS DIEUDONNE, individually and as a parent and natural guardian of JF, CF, and AF infants, ALINE TELUSCA, individually, collectively and as parents and natural guardians of, F.T. and S.T., infants, PAUL LARAME, individually and as a parent and natural guardian of, V.L., infant, VALQUISE LOUIS JACQUES, individually and as a parent and natural guardian of A.L., infant, MARIE ROSE MICHEL, individually and as a parent and natural guardian Y.M., infant, NADEGE DORCELLY, individually and as a taxpayer residing within the East Ramapo Central School District, SERGO PIERRE, individually and as a parent and natural guardian of A.P., infant, CADET SAUVAL, individually and as a parent and natural guardian of A.S., infant, TONY MARSEILLE, individually and as a parent and natural guardian of E.M., infant, MARIE LOUIS, individually, collectively and as parents and natural guardians of S.L., infant;, JUDSON LOUIS, individually, collectively and as parents and natural guardians of S.L., infant;, YOLENE BONNY, individually and as a parent and

natural guardian of APJ and PJ, infants, JULIA DERIVAL, individually and as a parent and natural guardian of S.D., infant, LINDA R. GILBERT, individually and as a parent and natural guardian of WG, DG, and JG, infants, DIEVLINE ST. GERMAIN, individually and as a taxpayer residing within the East Ramapo Central School District, MATHIE DIEJUSTE, individually, CLAUDE DORCELLY, individually and as a taxpayer residing within the East Ramapo Central School District, MARIE LAFONTANT, individually and as a parent and natural guardian of S.D., infant, LAGUERRE CICERON, individually, MARIE ROSE EXHAUTES, individually and as a taxpayer residing within the East Ramapo Central School District, DAPHKAR FLEURIS, individually and as a taxpayer residing within the East Ramapo Central School District, Peggy Floyd, individually and as a parent and natural guardian of S.F., infant, LOUIS WHARTON, individually and as a graduate of the East Ramapo Central School District, COURTNEY JOYCE, individually, BLANDINE LAROQUE, individually and as a parent and natural guardian of S.M., infant, JOSEPH CHARLES CLERVEAUX, individually and as a parent and natural guardian of C.C., infant, JEAN JEAN CHARLES, individually and as a parent and natural guardian of D.C., infant, MARIE NICOLE DESCAS, individually, collectively and as parents and natural guardians of N.D. and S.D.., infants, EUGENIE EUGENE, individually and as a parent and natural guardian of A.R. 1 and A.R. 2, infants, CARMELLE MEHU, individually, collectively and as a parents and natural guardians of C.M., F.M. and K.M., infants, U. JOSIE ALEXANDRE, individually and as a parent and natural guardian of ZA, DA and EA, infants, SHELOMITHE JEAN, individually and as a current student age 18 or older in the East Ramapo Central School District, PATRICIA DESROCHES, individually and as a graduate of the East Ramapo Central School District, DARLENE LAUTURE, individually and as a parent and natural guardian of BL and AL, infant, RUTH ARCHANGE, individually and as a parent and natural guardian of J.L. and R.L.1 and R.L.2, infants, EMMANUEL AUGUSTIN, individually and as a parent and natural guardian of E.A., K.A., M.A., and S.A., infants, BERTHANE ANTOINE, individually and as a taxpayer residing within the East Ramapo Central School District, MARILIA MONTILUS, individually and as a parent and natural guardian of S.M., infant, MARK GRIFFITH, JR., individually, MEGHAN C. FITZGERALD, individually and as a parent and natural guardian of S.C., infant, JUDY KARIUS, individually and as parents and natural guardians of F.K.; infant, MATT KARIUS, individually and as parents and natural guardians of F.K.; infant, ADOLPHE LUBIN, individually and as a graduate of the East Ramapo Central

School District, AGLA PIERRE, individually, collectively and as parents and natural guardians of G.P. infant, GESNER PIERRE, individually, collectively and as parents and natural guardians of G.P. infant, ALEXANDRA JOACHIM, individually and as a parent and natural guardian of S.J. infant, ALEXANDRA VOLCY, individually and as a parent and natural guardian of S.P. infant, ALLISSIA BASQUIAT, individually and as a graduate of the East Ramapo Central School District, AMANDA BLAND, individually and as a parent and natural guardian of A.R. 1 and A.R. 2, infants, AMIONNE CHARLES, individually and as a taxpayer residing within the East Ramapo Central School District, ANDREA NIEDELMAN, individually and as a parent and natural guardian of A.N. and T.N., infants, ANGELA JORDAN, individually and as a parent and natural guardian of R.P., infant, ANISE MACK, individually and as current student age 18 or older of the East Ramapo Central School District, ANISHA CARRASQUILLO, individually and as a parent and natural guardian of A.M. infant, ANITA CUNNINGHAM, individually and as a taxpayer residing within the East Ramapo Central School District, ANNAJEAN FRANCOIS, individually and as a taxpayer residing within the East Ramapo Central School District, ANNE DIEUJUSTE, individually and as a taxpayer residing within the East Ramapo Central School District, ANNEBETHE GUILLAME-FISH, individually and as a parent and natural guardian of S.P., infant, ANNIE F. WILSON, individually and as a parent and natural guardian of S.W., infant, ANNIE THOMSPON, individually and as a taxpayer residing within the East Ramapo Central School District, ANSELME HUGUETTE, individually and as a parent and natural guardian of A.B. and E.B., infants, ANTHONY GOULD, individually and as a parent and natural guardian of A.N. and T.N., infants, ANTONIO ETIENNE, individually and as a parent and natural guardian of B.E. and C.E., infants, ARKITE FELIX, individually and as a taxpayer residing within the East Ramapo Central School District, ASSETNE BERNARD, individually and as a taxpayer residing within the East Ramapo Central School District, BARBARA TURNER, individually and as a parent and natural guardian of L.E., infant, BETHANI JONES, individually and as a parent and natural guardian of J.J.1, J.J.2 and J.L., infants, BEVERLY PAIGE, individually and as a parent and natural guardian of D.C., infant, BILL MACK, individually and as a parent and natural guardian of A.M. and J.M., infants, BONNY YOLENE, individually and as a parent and natural guardian of A.J. and P.J., infants, BRENNAH HARRISON, individually and as a parent and natural guardian of N.S., infant, CARIDA PETIT-NAN, individually and as a parent and natural guardian of J.P. and S.P., infants, CARL

JENKINS, individually and as a parent and natural guardian of T.J., infant, CARLA JOHNSON, individually and as a parent and natural guardian of L.R., infant, CARLO JOSEPH, individually and as a parent and natural guardian of C.J., J.J., and R.J., infants, CARMEL FEDE, individually and as a taxpayer residing within the East Ramapo Central School District, CARMELLE JUSTINE-MOREAU, individually and as a taxpayer residing within the East Ramapo Central School District, CAROL SEC, individually and as a taxpayer residing within the East Ramapo Central School District, CASEY CICERON, individually and as a taxpayer residing within the East Ramapo Central School District, CATHERINE TELLEZ, individually and as a parent and natural guardian of J.L., infant, CERIL CAYO, individually and as a parent and natural guardian of B.C., D.C. and R.C., infants, CHANTAL JEAN, individually and as a parent and natural guardian of S.B., infant, CHARLES LOUVIERE, individually and as a parent and natural guardian of J.L., infant, CHERI PARIS-HUDSON, individually, collectively and as parents and natural guardian of C.H. infant, JOHN HUDSON, individually, collectively and as parents and natural guardian of C.H. infant, CHRISTINA DUNCAN, individually, collectively and as parent and natural guardian of C.D. and S.D.,. infants, RYAN DUNCAN, individually, collectively and as parent and natural guardian of C.D. and S.D.,. infants, CHRISTINA LOSIER, individually and as a graduate of the East Ramapo Central School District, CHRISTINIA PATTERSON, individually and as a parent and natural guardian of D.B. and M.B., infants, CICERON LAGUERRE, individually and as a taxpayer residing within the East Ramapo Central School District, CINDY SEVIER, individually and as a parent and natural guardian of J.S.1 and J.S.2, infants, CONSTANT FRIEND, individually and as a parent and natural guardian of N.F., infant, COURTNEY J. JASMIN, individually and as a taxpayer residing within the East Ramapo Central School District, CRAIG BEITAL, individually and as a parent and natural guardian of D.B., infant, DANIEL PIERRE MAURICE, individually and as a parent and natural guardian of D.M. and J.M., infants, DAVID MCCRAY, individually and as a taxpayer residing within the East Ramapo Central School District, DAWN HOLNESS, individually, collectively and as parents and natural guardians of D.H. infant, EROLL HOLNESS, individually, collectively and as parents and natural guardians of D.H. infant, DEBRAH BROWN, individually and as a parent and natural guardians of D.B., infant, DEMENTRIUS HOLMES, individually and as a taxpayer residing within the East Ramapo Central School District, DENISE BALTHAZAR, individually and as a parent and natural guardian of D.B., infant, DENISE DEL VALLE, individually and as a parent and

natural guardian of L.J. and P.J., infants, DIEUDONNE FERDILUS, individually and as a parent and natural guardian of A.F. and C.F., J.F., K.F. and S.F., infants, DOMINIQUE REMY, individually and as a graduate of the East Ramapo Central School District, DONOVAN DUNKLEY, individually and as a graduate of the East Ramapo Central School District, DOROTHY ROONEY, individually and as a taxpayer residing within the East Ramapo Central School District, DOSSELAINE BADIO, individually and as a taxpayer residing within the East Ramapo Central School District, DOUGLAS CANTOR, individually and as a parent and natural guardian of Z.C., infant, EDWARD MEDINA, JR., individually and as a parent and natural guardian of J.M., infant, ELDA GOUBOTH, individually and as a taxpayer residing within the East Ramapo Central School District, ELDINE CICERON, individually and as a taxpayer residing within the East Ramapo Central School District, EMMA SUBIAO-DIZON, individually and as a parent and natural guardian of M.D., infant, ENID LAMBERT, individually and as a parent and natural guardian of A.M., infant, ENLUS VIERGELINE, individually and as a parent and natural guardian of G.J. and M.J., infants, ENNEDY BASQUIAT, individually and as a taxpayer residing within the East Ramapo Central School District, ESPERA EMMANUEL, individually and as a taxpayer residing within the East Ramapo Central School District, ESTEL CADET, individually and as a parent and natural guardian of A.C., infant, ESTHER DURANDICE, individually and as a taxpayer residing within the East Ramapo Central School District, ETONNANTE JOSEPH, individually and as a parent and natural guardian of R.J., infant, FANNIE ONABANJO Q, individually and as a parent and natural guardian of D.B., infant, FARA ST.FLEUR, individually and as a taxpayer residing within the East Ramapo Central School District, FATIMA DARLENE CANICO, individually and as a taxpayer residing within the East Ramapo Central School District, FELICIA EVANS, individually and as a parent and natural guardian of C.E. and M.E., infants, FLORE ST.LOUIS, individually and as a parent and natural guardian of V.S., infant, FRANCENA HEYWARD, individually and as a parent and natural guardian of M.C. and M.S., infants, FRANCIS JAMAR, individually and as a parent and natural guardian of H.G., I.G. and N.G., infants, FRANCKEL M. JOSEPH, individually and as a taxpayer residing within the East Ramapo Central School District, FRANCOIS BEVOLUS, individually and as a taxpayer residing within the East Ramapo Central School District, FRANDY GEORGES, individually and as a taxpayer residing within the East Ramapo Central School District, FRED MICHEL, individually and as a taxpayer residing within the East Ramapo Central School

District, GARFIELD WALKER, individually and as a parent and natural guardian of A.W. and J.W., infants, GENIESE THEAGENE, individually and as a parent and natural guardian of S.F., infant, BAUDLAFRE THEAGENE, individually and as a parent and natural guardian of S.F., infant, GERRY DEDIVITIS, individually and as a parent and natural guardian of N.D., infant, GINA M. DUNCAN, individually and as a graduate of the East Ramapo Central School District, GLADYS CAYO, individually and as a parent and natural guardian of M.P. and S.J., infants, GLORIA KEY, individually and as a parent and natural guardian of A.K., S.K. and T.K., infants, GUY CHARLES, individually and as a parent and natural guardian of A.C., M.C. and T.C., infants, ILLYANA DEJEAN, individually and as a parent and natural guardian of M.F., infant, INGRID BOUCICANT, individually and as a graduate of the East Ramapo Central School District, INGRID PENA, individually and as a parent and natural guardian of A.E., B.E. and C.E., infants, ISENIELA JEAN CHARLES, individually and as a graduate of the East Ramapo Central School District, JACQUELINE GRANNUM, individually and as a parent and natural guardian of N.G.1, N.G.2 and N.G.3, infants, JAMES GULIFIELD, individually and as a parent and natural guardian of J.G., Q.G. and Q.G.2, infants, JANAY JORDAN, individually and as a parent and natural guardian of J.F., infant, JEAN BELLANTOU, individually and as a graduate of the East Ramapo Central School District, JEAN BOUCICANT, individually and as a graduate of the East Ramapo Central School District, JEAN CLAUDE AUGUSTE, individually, collectively and as parents and natural guardians of S.A., infant, LANA AUGUSTE, individually, collectively and as parents and natural guardians of S.A., infant, JEAN DENIS, individually and as a parent and natural guardian of W.D., A.D. and S.D., infants, JEAN JOSEPH, individually and as a parent and natural guardian of J.J. and K.J., infants, JEAN MARIO VIL, individually, collectively and as parents and natural guardians of R.V., infant, MARIMENE VIL, individually, collectively and as parents and natural guardians of R.V., infant, JEAN WILSON JOCELIN, individually and as a parent and natural guardian of S.J., infant, JEFHTEY CAJUSTE, individually and as a parent and natural guardian of K.R., infant, JERMAINE WALKER, individually and as a parent and natural guardian of I.W., N.W. and T.W., infants, JESITA CICERON, individually and as a graduate of the East Ramapo Central School District, JOCELINE SHANGASE, individually and as a parent and natural guardian of D.S., infant, JOEL GUE, individually and as a graduate of the East Ramapo Central School District, JOHN BOYKIN, individually and as a graduate of the East Ramapo Central School District, JOHN MILES, individually

and as a parent and natural guardian of X.M., infant, JOHNBERRY BADIO, individually and as a graduate of the East Ramapo Central School District, JORGE MONTANO, individually and as a parent and natural guardian of G.M., infant, JOSEPH CHARLES, individually and as a graduate of the East Ramapo Central School District, JOSEPH FLEURANT, individually and as a graduate of the East Ramapo Central School District, JOSETTE FRANCOIS, individually and as a graduate of the East Ramapo Central School District, JUANA SANTIAGO, individually and as a parent and natural guardian of C.G., infant, JUCANGE GASPORD, individually and as a graduate of the East Ramapo Central School District, JUDITH ISRAEL, individually and as a graduate of the East Ramapo Central School District, JUDITH JOHN-ROBINSON, individually and as a parent and natural guardian of L.R. and P.R., infants, JULYSSE ALEXANDRE, individually and as a graduate of the East Ramapo Central School District, JUSTIN BUDDE, individually and as a graduate of the East Ramapo Central School District, KALICHA CAMERON, individually and as a parent and natural guardian of K.C. and O.C., infants, KATHLEEN CANCIO, individually and as a graduate of the East Ramapo Central School District, KATHLEEN D. CASTOR, individually and as a graduate of the East Ramapo Central School District, KATHRIN BALL, individually and as a parent and natural guardian of K.J. and L.J., infants, KATHRYN KARIUS, individually and as a graduate of the East Ramapo Central School District, KATIANA SAME, individually and as a graduate of the East Ramapo Central School District, KATRINA GRIGSBY, individually and as a parent and natural guardian of K.G., infant, KELLY SCOTT, individually and as a graduate of the East Ramapo Central School District, KERNEY OBY, individually, collectively and as Grandparents and natural guardians of D.O., infant, SANDRA OBY, individually, collectively and as Grandparents and natural guardians of D.O., infant, KETNA FRENEL FORESTAL, individually and as a parent and natural guardian of D.F.1, D.F.2 and K.F., infants, KIMBERLY TREVISAN, individually and as a parent and natural guardian of K.T., S.T., V.T.1 and V.T.2., infants, KRISTEN RABELER, individually and as a parent and natural guardian of S.O., infant, LACHANDA JOHNSON, individually and as a parent and natural guardian of R.J., infant, LAGUERRE BERNADIN, individually and as a parent and natural guardian of B.L. and W.L., infants, LAMARRE BEAUVAIS, individually and as a graduate of the East Ramapo Central School District, LATASHA D. EVANS, individually and as a parent and natural guardian of O.J. and R.F., infants, LATICIA THEZAN, individually and as a parent and natural guardian of C.T. and J.T., infants, LATTICHA ACKERMAN,

individually and as a parent and natural guardian of D.A. and J.J., infants, LEON CAYO, individually, collectively and as parents and natural guardians of I.C., infant, MONA CAYO, individually, collectively and as parents and natural guardians of I.C., infant, LINDA HARVEY, individually and as a parent and natural guardian of B.H. and T.H., infants, LISA GOLDBERG, individually and as a parent and natural guardian of B.M., G.G., M.G. and S.M., infants, LISA PHILLIPS, individually and as a parent and natural guardian of O.P., infant, LOCITA PIERRE, individually and as a parent and natural guardian of C.E., infant, LORA FULLARD, individually and as a graduate of the East Ramapo Central School District, LOUIS JEAN JACQUES, individually and as a parent and natural guardian of J.J., infant, LUCY BROCKS, individually and as a graduate of the East Ramapo Central School District, MACK ROBERTS, individually and as a parent and natural guardian of S.L. and T.B., infants, MAE OLA MCGILL, individually and as a parent and natural guardian of T.L., infant, MANUEL PALMA, individually, collectively and as parents and natural guardians of C.P., J.P., and M.P., infants, MAYRA PALMA, individually, collectively and as parents and natural guardians of C.P., J.P., and M.P., infants, MARC-AUGUSTE DESERT, individually and as a graduate of the East Ramapo Central School District, MARCUS EXANTUS, individually and as a graduate of the East Ramapo Central School District, MARGUEDALA LAHENS, individually and as a parent and natural guardian of I.L. and M.L., infants, JEAN EMMANUEL LAHENS, individually and as a parent and natural guardian of I.L. and M.L., infants, MARIA SINGH, individually and as a parent and natural guardian of E.S., infant, PATRICK JEAN BAPTISTE, individually, collectively and as parents and natural guardians of D.J.1 and D.J.2 and P.J., infants, MARIE CADICHON, individually and as a graduate of the East Ramapo Central School District, MARIE CAIZON, individually and as a graduate of the East Ramapo Central School District, MARIE CHARLES, individually and as a graduate of the East Ramapo Central School District, MARIE CLERVEAUX, individually and as a graduate of the East Ramapo Central School District, MARIE JOSEPH, individually and as a graduate of the East Ramapo Central School District, MARIE KATTY DORELEUS, individually and as a graduate of the East Ramapo Central School District, MARIE LEONARD, individually and as a parent and natural guardian of A.L., infant, MARIE THERES LUBIN, individually and as a parent and natural guardian of A.L.1, A.L.2, B.L. and S.L., infants, MARIE Y DELPE MANBRUN, individually and as a graduate of the East Ramapo Central School District, MARION GRANT, individually and as a graduate of the East Ramapo Central

School District, MARLENE SANCHEZ, individually and as a parent and natural guardian of R.F., infant, MARTHA SAINT FORT, individually and as a graduate of the East Ramapo Central School District, MARY HAYES, individually, collectively and as parents and natural guardians of Z.H., infant, MARY JAMES GIBSON, individually, collectively and as parents and natural guardians of K.C., infant, MARYANN WILLIAMS, individually and as a parent and natural guardian of C.W., K.W., O.W., and T.W., infants, MATHIEU DIEUJUSTE, individually and as a taxpayer residing within the East Ramapo Central School District, MICHAEL LAKES, individually and as a parent and natural guardian of A.L., infant, MICHELE LOVELL, individually and as a parent and natural guardian of I.L., infant, MINI JACOB, individually and as a parent and natural guardian of J.J.1 and J.J.2., infants, MONA LEGER, individually and as a parent and natural guardian of M.L. and S.L., infants, MYRTHO FERDINAND, individually and as a parent and natural guardian of B.L. and W.L., infants, NADIA DORCELLY, individually and as a taxpayer residing within the East Ramapo Central School District, NAMOI JOSEPH, individually and as a parent and natural guardian of M.R., infant, NANA TWUM, individually and as a taxpayer residing within the East Ramapo Central School District, NANCY TOUSSAINT, individually, collectively and as parents and natural guardians of H.T., infant, RAPHAEL TOUSSAINT, individually, collectively and as parents and natural guardians of H.T., infant, NAOMI BAHLE, individually and as a taxpayer residing within the East Ramapo Central School District, NAOMI LEGERME, individually and as a taxpayer residing within the East Ramapo Central School District, NAOMY LAGUERRE, individually and as a parent and natural guardian of D.B. and J.A., infants, NATALIE SANCHEZ, individually and as a parent and natural guardian of A.S., C.S. and M.S., infants, NESLIE CADET ALTUME, individually and as a taxpayer residing within the East Ramapo Central School District, NICOLAS MONTANO, individually and as a taxpayer residing within the East Ramapo Central School District, NICOLE RAPHINO, individually and as a parent and natural guardian of A.M., A.P. and M.M., infants, ONIKKA WHITEHEAD, individually and as a parent and natural guardian of E.W. and I.W., infants, ORICHA HERNANDEZ, individually and as a taxpayer residing within the East Ramapo Central School District, ORLANDO LORVEUS, individually and as a parent and natural guardian of A.L., D.L. and J.L., infants, OSNY EXANTUS, individually and as a taxpayer residing within the East Ramapo Central School District, PAMELA HILL, individually and as a parent and natural guardian of K.W.1 and K.W.2, infants, PAMELA SIMPSON, individually and as a

parent and natural guardian of Q.W., infant, PATRICIA BYNUM, individually and as a taxpayer residing within the East Ramapo Central School District, PHYNESCHEA SHAARIEFEREL, individually and as a parent and natural guardian of J.J. and T.J., infants, PIERRE LOUIS CYNILLE, individually and as a taxpayer residing within the East Ramapo Central School District, PRISCILLA BROWN, individually and as a parent and natural guardian of A.A., infant, PRUCILE VALEUS, individually, collectively and as parents and natural guardians of E.V., N.V. and R.V., infant, RAQUEL NEWELL, individually and as a parent and natural guardian of H.N., infant, RAQUEL PAUL, individually and as a graduate of the East Ramapo Central School District, RASHEED JERIMIE, individually and as a taxpayer residing within the East Ramapo Central School District, RAYMONDE BEAUVAIS, individually and as a taxpayer residing within the East Ramapo Central School District, REBEA GRARDA, individually and as a taxpayer residing within the East Ramapo Central School District, REGINE TAYETTE, individually and as a parent and natural guardian of M.M., infant, RICKEY MCGILL, individually and as a parent and natural guardian of R.M. and S.M., infants, ROBERT MCGEE, individually and as a parent and natural guardian of R.M., infant, ROBERT YOUNG, individually and as a parent and natural guardian of R.Y., infant, MARIE JOSIE ALEXANDRE, individually, collectively and as parents and natural guardians of D.A., E.A. and Z.A., infants, ROSELAURE FLEURANTIN, individually and as a parent and natural guardian of R.F. and S.F., infants, ROSE FRASER, individually and as a taxpayer residing within the East Ramapo Central School District, ROWSON BOIROND, individually and as a graduate of the East Ramapo Central School District, RUBIN JOANUS, individually and as a parent and natural guardian of B.J. and G.J. and P.J., infants, RUTH LAUTURE-WALKER, individually and as a parent and natural guardian of J.L., M.L. and O.L.,. infants, SAHARA EVANS, individually and as a graduate of the East Ramapo Central School District, SANTANA ALLARD, individually and as a parent and natural guardian of J.S. and S.A., infants, SERETTE LAURENT, individually and as a parent and natural guardian of A.C., infant, SHARON BRYANT, individually and as a taxpayer residing within the East Ramapo Central School District, SHEILA JACKSON, individually and as a parent and natural guardian of S.J., infant, SHEILA JEFFRIES, individually and as a parent and natural guardian of A.J. and J.J., infants, SHERINE GORDON, individually and as a parent and natural guardian of B.L.1 and B.L.2, infants, SHIRLEY JACKSON, individually and as a parent and natural guardian of T.W., infant, SIABHAIN SNEAD, individually and as a parent

and natural guardian of C.B. and T.B., infants, SONIA B. WATKINS, individually and as a parent and natural guardian of G.W., infant, STEPFON MCCRAY, individually and as a graduate of the East Ramapo Central School District, STEPHANIE KARIUS, individually and as a graduate of the East Ramapo Central School District, STEPHANIE LAURENT, individually and as a parent and natural guardian of G.M.1 and G.M.2., infants, STERLING INZAR, individually, collectively and as parents and natural guardians of DI. and T.I., infants, LORRAINE INZAR, individually, collectively and as parents and natural guardians of DI. and T.I., infants, SYLVIE PIERRE, individually and as a parent and natural guardian of E.P., infant, TAMME WHITAKER, individually and as a parent and natural guardian of R.W., infant, TERREL ACKERMAN, individually and as a graduate of the East Ramapo Central School District, TERRY BYNUM, individually and as a parent and natural guardian of A.B. and D.B., infants, TJOKDALEM ARSA ARTHA, individually and as a taxpayer residing within the East Ramapo Central School District, TRACY HARRIS, individually and as a parent and natural guardian of C.H., E.H. and N.H., infants, ULANA WILSON-ORTA, individually, collectively and as parents and natural guardians of A.O. and S.W., infant, ANTHONY WILSON-ORTA, individually, collectively and as parents and natural guardians of A.O. and S.W., infant, VERONA GREY, individually and as a graduate of the East Ramapo Central School District, VERONICA LEVEILLE, individually and as a parent and natural guardian of C.L., L.L., R.K., and S.L., infants, VICTORIA COPELAND, individually and as a parent and natural guardian of D.C., infant, VICTORIA JEAN CHARLES, individually and as a graduate of the East Ramapo Central School District, VIRGINIA HARRIS, individually and as a parent and natural guardian of T.H., infant, VITAL JOSEPH, individually, collectively and as parents and natural guardians of S.J., infant, TANYA JOSEPH, individually, collectively and as parents and natural guardians of S.J., infant, WELMIR FRANCOIS, individually and as a graduate of the East Ramapo Central School District, WILBUR STUART, individually and as a graduate of the East Ramapo Central School District, WILLARD BODIE, individually and as a parent and natural guardian of D.W., infant, WILLIAM TYNES, individually, collectively and as parents and natural guardians of D.S. and D.T., infants, TEAL YVETTE TYNES, individually, collectively and as parents and natural guardians of D.S. and D.T., infants, WILLIAM FLLOYD, individually and as a parent and natural guardian of J.F., infant, CHARLES-PIERRE, individually and as a taxpayer residing within the East Ramapo Central School District, YOLANDA BARHAM, individually and as a parent and natural

14-3721-cv(L)
*Montesa, et al. v. Schwartz, et al.*

guardian of D.O., infant, YOLANDA NAVARRO, individually and as a parent and natural guardian of R.P., infant, YOLANDE PANIAGUE, individually and as a parent and natural guardian of L.H. and O.H., infants, YOLENE ALTIDOR, individually and as a taxpayer residing within the East Ramapo Central School District, YONEL CADICHON, individually and as a taxpayer residing within the East Ramapo Central School District, YVELOURD TREVIL, individually and as a parent and natural guardian of Y.T., infant, YVETA BELANGE, individually, collectively and as parents and natural guardians of E.B. and Y.B., infants, HARRY BELANGE, individually, collectively and as parents and natural guardians of E.B. and Y.B., infants, YVONNE LORINCE, individually and as a parent and natural guardian of S.L., infant; on behalf of a class of similarly situated persons, on behalf of themselves and on behalf of the East Ramapo Central School District, TAISHA PAQUIOT, individually and as a parent and natural guardian of P.D., infant, CAROLD FORTUNE, individually, collectively and as parents and natural guardians of T.F., infants, FRANKY SAINVIL, individually and as a taxpayer residing within the East Ramapo Central School District, LISA MYERS, individually and as a parent and natural guardian of S.M., infant, SAMESON DESCAS, individually, collectively and as parents and natural guardians of N.D. and S.D., infants, CARME MEHU, individually and as a graduate of the East Ramapo Central School District, MARJORIE METELLUS, individually and as a parent and natural guardian of I.C., infant, HARRIET CHAMBERS, individually and as a parent and natural guardian of A.J., J.C. and R.C., infants,

*Plaintiffs-Appellees,*

- v. -

DANIEL SCHWARTZ, YEHUDA WEISSMANDL, MOSES FRIEDMAN, MOSHE HOPSTEIN, ELIYAHU SOLOMON, ARON WIEDER, MORRIS KOHN, RICHARD STONE, JOEL KLEIN, ELIEZER WIZMAN, ALBERT D'AGOSTINO, NATHAN ROTHSCHILD,

*Defendants-Appellants,*

EAST RAMAPO CENTRAL SCHOOL DISTRICT,

*Defendant.*

_____

14-3721-cv(L)
*Montesa, et al. v. Schwartz, et al.*

Before: HALL and LOHIER, *Circuit Judges*, and REISS, *District Judge*.[*]

We address an Interlocutory and Certified Appeal from a decision of the United States District Court for the Southern District of New York (Seibel, *J.*) which held that the Plaintiffs-Appellees—Students currently attending East Ramapo public schools—have standing to bring 42 U.S.C. § 1983 claims against the Defendants-Appellants—present and former East Ramapo School Board Members—for violating the Establishment Clause of the First Amendment to the United States Constitution and that the Board Members are not entitled to qualified immunity. The Board Members argue that the students lack standing because they did not suffer a direct injury resulting from a violation of the Establishment Clause. The Board Members further contend that even if the students have standing, the Board Members are entitled to absolute and qualified immunity. We hold that the Students lack standing to pursue their Establishment Clause claims, and therefore those claims must be dismissed. Judge Reiss dissents in a separate opinion.

REVERSED and REMANDED.

---

[*] The Honorable Christina Reiss of the United States District Court for the District of Vermont, sitting by designation.

14-3721-cv(L)
*Montesa, et al. v. Schwartz, et al.*

LAURA D. BARBIERI,
  Arthur Zachary Schwartz, Advocates for Justice Legal Foundation, New York, NY *for Plaintiffs-Appellees.*

DAVID J. BUTLER,
  Bryan M. Killian, Randall M. Levine, David B. Salmons, Stephanie Schuster, Morgan, Lewis & Bockius, LLP, Washington, DC *for Defendants-Appellants Daniel Schwartz, Yehuda Weissmandl, Moses Friedman, Moshe Hopstein, Eliyahu Solomon, Aron Wieder, Morris Kohn, Richard Stone, Joel Klein, and Eliezer Wizman.*

MARK D. HARRIS,
  Adam W. Deitch, Jessica Zietz, Proskauer Rose LLP, New York, NY *for Defendant-Appellant Nathan Rothschild.*

MEREDITH D. BELKIN,
  Marian C. Rice, L'Abbate, Balk, Colavita & Contini, LLP, Garden City, NY *for Defendant-Appellant Albert D'Agostino.*

HALL, *Circuit Judge*:

## I.    BACKGROUND

This case is a part of a longstanding conflict within the East Ramapo School District (the "District") in Rockland County, New York. The Plaintiffs-Appellees ("Student-Plaintiffs") are students who are currently enrolled in the

1

District's public school system. They allege that a majority of the East Ramapo School District Board ("School Board") are of the Orthodox/Hasidic Jewish faith or are sympathetic to the interests of the Orthodox/Hasidic Jewish community ("Board Defendants").[1] The Student-Plaintiffs claim that over the last decade the Board Defendants have siphoned money out of the public school system and into yeshivas and other religious organizations for the benefit of the Hasidic children's religious education and the Board Defendants' shared religious community. The Student-Plaintiffs allege that the Board Defendants have promoted the Hasidic Jewish faith in violation of the First Amendment to the United States Constitution by (1) systematically funding Hasidic schools with public monies by manipulating the Individuals with Disabilities Education Act ("IDEA") settlement process, (2) providing preferential treatment to Hasidic Institutions when they attempted to sell and lease two school buildings, and (3) buying religious books with public money and loaning the books to Hasidic schools.

---

[1] Student-Plaintiffs further assert in their briefs that Board Defendants' children do not attend the District's schools. We do not consider this allegation, which appears for the first time in their brief. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) for the proposition that "a party may not amend pleadings through a brief").

## I D E A SETTLEMENT PROCESS

Pursuant to both federal and state law, school districts are required to provide students with disabilities a free and appropriate public education. School districts are required to create an individualized education program ("IEP") for each student with a disability. 20 U.S.C. § 1414(d). Each such student is entitled to receive an IEP that is individually tailored to meet the student's specific needs. Each school district has a Committee on Special Education ("CSE") that is tasked with comprehensively evaluating each student to identify the student's individualized special education needs and annual goals. Parents may work with the CSE in order to facilitate a school placement and IEP that satisfies the school district and the family. If a parent disagrees with the CSE's placement determination, the parent has the right to an Impartial Hearing. *See* 20 U.S.C. § 1415. If, however, parents choose unilaterally to send their child to private school without completing the Impartial Hearing process, the parent does not have a right to receive tuition reimbursement from the state or the school district. *See* 20 U.S.C. § 1412. In any case, the school district and parents may be reimbursed by the state and federal government for any special

3

education placement in a private school that is approved by the CSE. *See* 20 U.S.C. § 1411.

The Student-Plaintiffs assert that over the past several years an increasing number of students purportedly eligible for special education services in the District have been placed in private religious schools for the ostensible purpose of providing those students with required services under the IDEA. The Student-Plaintiffs allege that the Board Defendants have an unwritten agreement with Hasidic parents by which any Hasidic student who is eligible for an IEP will be placed in a religious school if the Hasidic parents simply write a letter to the Board disagreeing with the public school CSE placement and requesting a private school placement.[2] The Board Defendants then pass a private placement resolution in lieu of an Impartial Hearing and reimburse the parents for the tuition of the private placement. Because the IDEA settlements occur prior to the Impartial Hearing, the district is not statutorily entitled to reimbursement from the state or federal government. The Student-Plaintiffs allege that the Board Defendants knew or should have known before affirming the IDEA settlement

---

[2] The Student-Plaintiffs allege that the placements occurred at three ethnically, racially, and religiously homogenous schools: Rockland Institute for Special Education, Kiryas Joel (an out of District public school with a substantial Hasidic student population), and Hebrew Academy for Special Children.

agreements that appropriate non-religious school placements were available and were or would have been proposed by the CSE. The Student-Plaintiffs allege that by manipulating the IDEA settlement process, the Board Defendants diverted funds away from the public schools in the District and into the Hasidic religious institutions.

In the spring of 2010, the Office of Special Education of the New York State Education Department ("NYSED") conducted a monitoring review to ensure that the District's policies, procedures, and practices regarding the placements of students with disabilities were consistent with the requirements of federal and state laws and regulations. NYSED determined that the District had violated a number of regulations and had engaged in a practice of placing students with disabilities in private schools when appropriate placements were available in public facilities. NYSED ordered the District to take remedial action that included ordering the CSE to re-evaluate and revise the placement recommendations of the students placed in private schools that lacked the proper documentation.

In February 2012, after NYSED conducted a follow-up monitoring review of the District's private school special education placements to ensure that the

deficient practices had been successfully changed, NYSED determined that the District had failed to implement the recommended changes. As a result, NYSED withheld reimbursement, thereby costing the District millions of dollars.

REAL ESTATE TRANSACTIONS

In April 2009, the School Board closed Colton Elementary School. The School Board then leased Colton to the Hebrew Academy for Special Children ("HASC") and Congregation Basi Malka, a synagogue, for a period of five years. For three of those five years, the School Board allegedly did not increase the rent and repeatedly allowed HASC to pay rent late.[3] In preparing to sell the property, the School Board hired Valuation Plus, Inc. to appraise Colton. Valuation Plus valued the property at $6.6 million. The Town of Ramapo Real Property Assessment lists Colton's market value at just under $12 million. On May 25, 2011, the School Board agreed to sell Colton to HASC and Bais Malka for $6.6 million.

In April 2009, the School Board also closed the Hillcrest School and hired Valuation Plus, Inc., to appraise the property. Valuation Plus appraised Hillcrest at $5.9 million. After issuing a Request for Proposals and receiving a number of

---

[3] The Student-Plaintiffs concede that the tenants eventually paid the District all of the back rent that they owed.

bids from local Hasidic institutions, the School Board received a second appraisal from Appraisal Group International that valued Hillcrest at $3.24 million. The Town of Clarkstown estimated Hillcrest's value at $11 million, and a separate third-party appraiser valued the property at $13.9 million. The District accepted Congregation Yeshiva Avir Yakov's $3.1 million bid. On August 31, 2010, the New York State Commissioner of Education prohibited the sale from closing, and the Congregation began leasing the property instead. On June 6, 2011, the Commissioner officially set aside the sale.

## TEXTBOOK PURCHASES

Beginning in 2011, the Student-Plaintiffs allege, the Board Defendants ordered or condoned the ordering of non-secular books that reflected traditional values and stories rooted in the Jewish tradition. The books include titles that contain obvious Jewish themes such as: *I Keep Kosher*, *Let's Go to Shul!*, and *Why Weren't You Zisha and Other Stories*. The Board Defendants then loaned these books to students attending local yeshivas.

## THE LAWYER: ALBERT D'AGOSTINO

In November 2009, the School Board replaced its previous general counsel with Albert D'Agostino. D'Agostino previously gained a reputation for

representing the Lawrence Union Free School District's Board of Education, which has political and demographic traits similar to those of the East Ramapo School District. The majority of board members on the Lawrence Board of Education are alleged to have been practitioners of the Orthodox Jewish religion, whose children attended private yeshivas. The Student-Plaintiffs allege that, both in this case and in the Lawrence School District, D'Agostino devised an IDEA settlement scheme in order to divert public money into private religious schools. Upon commencing work in East Ramapo, D'Agostino is alleged to have billed the District at a significantly higher hourly rate than the School Board's previous counsel. According to the plaintiff's Complaint, at School Board meetings D'Agostino has exhibited an extremely combative and alienating style that has offended and antagonized the community members who are opposed to the School Board's actions.

## II.   PROCEDURAL HISTORY

Three groups of plaintiffs brought the underlying lawsuit: (1) the Student-Plaintiffs, (2) former students, and (3) taxpayer plaintiffs. These plaintiffs collectively sued four groups of defendants: current school board members,

former school board members, the school board's lawyer Albert D'Agostino,[4] and the East Ramapo School District.[5]

The underlying lawsuit asserted ten different claims, alleging various violations of common law, state statutes, federal statutes, and the United States Constitution. The district court dismissed, for failure to state a claim, all of the claims except those asserting violations of the Establishment Clause.[6] The district court also dismissed all of the former students' claims for lack of standing. The remaining plaintiffs amended their complaint alleging under 42 U.S.C. § 1983 that the Defendants collectively promoted the Hasidic Jewish faith in violation of the First Amendment by (1) systematically funding Hasidic schools with public monies through the manipulation of the IDEA settlement process, (2) providing preferential treatment to Hasidic institutions when they attempted to sell and lease two school buildings, and (3) buying religious books with public money

---

[4] The Student-Plaintiffs do not bring claims against D'Agostino with respect to the religious textbook purchases.

[5] The plaintiffs originally brought the underlying suit on behalf of the East Ramapo School District; due to the nature of the claims, however, the magistrate judge ordered the District to intervene on behalf of the defendants.

[6] The district court initially allowed the New York state law claim for unlawful gift of public funds to move forward but later dismissed this claim as well.

and loaning the books to religious schools. The plaintiffs seek an injunction, monetary damages, and attorneys' fees.

Responding to the Amended Complaint, the defendants then collectively moved for judgment on the pleadings, asserting, among other things, that they were entitled to absolute and qualified immunity and that the Student-Plaintiffs lacked standing. The district court determined that the defendants were not entitled to either absolute or qualified immunity and that the Student-Plaintiffs had standing. The district court also dismissed all of the plaintiffs' § 1983 Establishment Clause claims for equitable relief against all the former Board Defendants because those defendants were no longer on the Board and an equitable judgment against them could not redress any of the plaintiffs' injuries.[7] In addition, the district court dismissed the Taxpayer-Plaintiffs' claims for damages, determining that the Taxpayer-Plaintiffs could only be entitled to declaratory and injunctive relief. The Taxpayer-Plaintiffs are not a party to this interlocutory appeal, their claims are not before us, and their suit is currently proceeding in the district court.

---

[7] The district court also dismissed the Student-Plaintiffs' claims against former board member Nathan Rothschild for the claims relating to the Colton School transaction and the religious book purchases because he was not on the board at the time these transactions had taken place.

The district court certified to this court for interlocutory appeal under 28 U.S.C. § 1292(b) its decision that the Student-Plaintiffs had standing to bring an Establishment Clause claim. We granted the Defendants' petition for interlocutory appeal to address two issues: whether the Student-Plaintiffs have standing and whether the Defendants are protected by absolute or qualified immunity. Because we conclude that the Student-Plaintiffs do not have standing to pursue their claims under the circumstances of this case, we address only the standing issue.

## III.  DISCUSSION

The Student-Plaintiffs allege that the Defendants' unconstitutional actions contributed to the defunding of the public school system, which in turn injured the Student-Plaintiffs by depriving them of educational opportunities and by damaging their psychological and mental well-being. For the reasons that follow we hold that the Student-Plaintiffs lack standing to assert their Establishment Clause claims because they are only indirectly affected by the conduct alleged to violate the Establishment Clause.

We review *de novo* a district court's decision regarding plaintiffs' standing. *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d

183, 191 (2d Cir. 2014). At the pleading stage, we "accept[] all well-pleaded allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Bigio v. Coca–Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012) (internal quotation and alteration omitted). In rebutting a motion to dismiss, "[t]he party invoking federal jurisdiction bears the burden of establishing" the elements of standing "with the manner and degree of evidence required." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" or "Controversies." U.S. CONST. art. III, § 2. The purpose of Article III is to limit federal judicial power "to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." *Valley Forge Christian Coll. v. Ams. United For Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (quoting *Flast v. Cohen*, 392 U.S. 83, 97 (1968)). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 38 (2d Cir. 2015) (internal quotation omitted). Three elements comprise the "irreducible constitutional minimum," *Lujan*, 504 U.S. at 560, of Article III

standing: "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision," *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotations omitted). To be sufficient for purposes of standing, an injury must be "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan*, 504 U.S. at 560 (internal quotations, citations, and footnote omitted). In determining standing, we focus on "the party seeking to invoke federal jurisdiction, rather than the justiciability of the issue at stake in the litigation." *Fulani v. Bentsen*, 35 F.3d 49, 51 (2d Cir. 1994).

In addition to analyzing these standing requirements, we have "adverted to a 'prudential' branch of standing," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014), which embodies "judicially self-imposed limits on the exercise of federal jurisdiction," *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (internal quotation omitted) *abrogated on other grounds by Lexmark*, 134 S. Ct. at 1387. Prudential standing encompasses the rule against the adjudication of generalized grievances, the rule prohibiting plaintiffs from asserting the rights of third parties, and the rule barring claims that fall

outside "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge*, 454 U.S at 474–75 (internal quotation omitted). Although characterized as "prudential," these concerns relate to the elements of Article III standing. *See Lexmark*, 134 S. Ct. at 1387 n.3; *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam).

As relevant to the Student-Plaintiffs' claims before us, the First Amendment declares that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. This mandate has been made "wholly applicable to the States by the Fourteenth Amendment." *Sch. Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 215 (1963)). Litigants asserting an Establishment Clause claim against a State or municipal defendant must, like all civil litigants, demonstrate standing. *See Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1107 (2d Cir. 1992). Our jurisprudence has developed three distinct theories of standing entitling an individual to pursue a claim that the Establishment Clause has been violated: (1) taxpayer, (2) direct harm, and (3) denial of benefits. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 129–30 (2011). These three theories evolved out of the unique context in which plaintiffs bring Establishment Clause claims and have come into existence because

Establishment Clause injuries, by their nature, can be "particularly elusive." *Saladin v. City Milledgeville*, 812 F.2d 687, 691 (11th Cir. 1987). The unconstitutional promotion of religion often injures no particular individual any more than any other individual. That is, unlike most litigated injuries, the harm is often inherently generalized. *See Valley Forge*, 454 U.S. at 475. Thus, these specific theories of standing developed in response to the concerns that gave rise to our prudential standing jurisprudence, and they have evolved to allow only particular types of Establishment Clause injuries to be adjudicated.

Here, the Student-Plaintiffs' sole argument is that they have standing under a direct exposure theory to assert that the Defendants violated the Establishment Clause and directly injured them.[8] *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 72 (2d Cir. 2001) ("[S]tanding to assert an Establishment Clause claim may rest . . . on the plaintiff's direct exposure to the challenged activity."). We therefore address only whether the Student-Plaintiffs have sufficiently

---

[8] The term "direct exposure" arises out of our jurisprudence construing the direct harm theory of standing under the Establishment Clause, and our use of the term "direct exposure" here includes all theories of direct harm. *See Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 72 (2d Cir. 2001).

15

pleaded a basis demonstrating their direct exposure to the unconstitutional establishment of religion.[9]

In order to establish direct exposure standing, the Student-Plaintiffs must allege that they are "directly affected by the laws and practices against which their complaints are directed." *Schempp*, 374 U.S at 224 n.9. In delineating between a direct effect and an indirect effect of a challenged governmental act, i.e. the directness of a plaintiff's injury, we are guided by our Establishment Clause jurisprudence. A review of our precedent reveals that direct exposure cases tend to occur in two different contexts: 1) the plaintiff is exposed to and affected by a law that on its face establishes religion ("religious law" cases) or 2) the plaintiff is exposed to and affected by a religious expression or message sponsored or promoted by the government, ("expression" cases).[10] Under the

---

[9] As noted above, the plaintiffs who have asserted standing as taxpayers are proceeding in the district court to advance their Establishment Clause claims. The Student-Plaintiffs are not among the taxpayers group that is continuing to challenge the constitutionality of the Defendants' actions. If the taxpayer plaintiffs succeed in proving their claims, they will be entitled to an injunction. In this respect, we note that the primary difference between the Student-Plaintiffs' claims and the taxpayer claims is that, by structuring their claims under a direct exposure theory, the Student-Plaintiffs are not limited to injunctive relief and are able to seek damages.

[10] Although many of the "religious law" cases do not use the term "direct exposure," these cases are similar to the "expression" cases in that both types of

religious law line of cases, a religious law's prohibition or mandate is grounded in or at least significantly influenced by a "religious" tenet or principle (e.g., the sinfulness of consuming alcohol) and directly and immediately injures the plaintiff's economic well-being.[11] *See Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 118 (1982) (plaintiff was denied a liquor license because of store's proximity to a church, thus resulting in economic loss); *Torcaso v. Watkins*, 367 U.S. 488, 489–90 (1961) (plaintiff was prohibited from holding office in Maryland because he refused to swear that he believed in God); *Two Guys From Harrison-Allentown, Inc. v. McGinely*, 366 U.S. 582, 592 (1961) (plaintiff was prosecuted for violating blue laws and was prohibited from selling goods on Sunday). Under these cases, the

---

cases involve plaintiffs being confronted directly by the challenged action— either religion-infused laws or religious messages.

[11] To the extent that the Defendants argue the Student-Plaintiffs lack standing because their injury is not religious in nature, *see Smith v. Jefferson Cty. Bd. of Sch. Comm'rs.*, 641 F.3d 197 (6th Cir. 2001) (en banc), we note that standing to assert a violation of the Establishment Clause is broader than standing with respect to Free Exercise Clause claims. *See Schempp*, 374 U.S. at 224 n.9; *Altman*, 245 F.3d at 72. Importantly, unlike claims under the Free Exercise Clause, nonreligious and economic injuries are sufficient to establish standing under the Establishment Clause. *See McGowan v. State of Maryland*, 366 U.S. 420, 430 (1961) (recognizing standing for an Establishment Clause claim where the "[a]ppellants . . . concededly have suffered direct economic injury"). We therefore discern no requirement that an Establishment Clause injury must implicate a plaintiff's religious sensibilities in order for a plaintiff to establish standing to assert such a claim.

plaintiffs challenged a facially religious law that was causing personalized economic harm. *See McGowan v. State of Maryland.*, 366 U.S. 420, 430–31 (1961) ("Appellants here concededly have suffered direct economic injury, allegedly due to the imposition on them of the tenets of the Christian religion. We find that, in these circumstances, these appellants have standing to complain that the statutes are laws respecting an establishment of religion.").

In "expression" cases, by comparison, the plaintiff's injury is not economic. The injury often occurs when a plaintiff comes into contact with, or is exposed to, a government-promoted expression of religion. These exposures usually occur in public spaces, *see Van Orden v. Perry*, 545 U.S. 677, 682 (2005) (plurality op.) (plaintiff challenging a display of the Ten Commandments outside the Texas State Capitol), or in public schools, *see Engel v. Vitale*, 370 U.S. 421, 423 (1962) (plaintiff challenging a state program of daily classroom prayer). The injury in an "expression" case can be difficult to distill because the basis for the injury is simply exposure to a state-sponsored religious message. *Cooper v. U.S. Postal Service*, 577 F.3d 479, 489 (2d Cir. 2009) ("Standing is often a tough question in the Establishment Clause context, where the injuries alleged are to the feelings alone. This is often the case in religious display cases where the fact of exposure

becomes the basis for injury and jurisdiction."). Because this injury is often elusive, the connection between the plaintiff and the challenged action—i.e. the "exposure"—must be direct and immediate in order to satisfy the requirement that the plaintiff have a "direct and personal stake in the controversy." *Sullivan*, 962 F.2d at 1107.

Synthesizing these several types of cases, we can conclude that a plaintiff will have direct exposure standing in at least the following circumstances: when (1) a plaintiff is personally constrained or otherwise subject to control under a governmental policy, regulation, or statute grounded in a "religious" tenet or principle (e.g., a statute that directly precludes plaintiff from conducting business on Sunday); or (2) a plaintiff is personally confronted with a government-sponsored religious expression that directly touches the plaintiff's religious or non-religious sensibilities. In both situations, it is a plaintiff's interaction with or exposure to the religious object of the challenged governmental action that gives rise to the injury. Thus, a plaintiff is "directly affected," *Schempp*, 374 U.S at 224 n.9, as opposed to indirectly affected, by an unconstitutional governmental action when a plaintiff's injury arises out of plaintiff's immediate and personal confrontation with the object of that

governmental action—most commonly a government-sponsored religious expression or a governmental policy, statute, or regulation grounded in a "religious" tenet or principle.

The Student-Plaintiffs argue that their claims fall within the direct exposure line of cases because they are "directly affected" by the Defendants' unconstitutional acts. *Schempp*, 374 U.S at 224 n.9. They contend that the unconstitutional IDEA settlement payments reduce the size of the District's budget, which directly affects the quality of the education they receive.[12] Specifically, the Student-Plaintiffs allege that in "order to fund their unconstitutional diversion of public resources to the yeshivas and religious education, the Defendants have significantly cut spending on programs fundamental to the operation of the public schools," Joint App'x at 1081, and that the Defendants have decreased the number of "advanced classes, [Board of

---

[12] We are skeptical that the Student-Plaintiffs have alleged a causal connection between the real estate transactions or the religious book purchases and their educational injury because the real estate sales were never finalized and the religious book purchases had a *de minimis* effect on the District's budget. Regardless, our analysis of the Student-Plaintiffs' standing in relation to their IDEA Settlement claims applies with equal force to the real estate transactions and religious book purchases because, to the extent that these actions affect the District's budget, the relationship between the District's budget and the educational injury is the same.

Cooperative Educational Services] programs, teachers, and guidance counselors" available to the Student-Plaintiffs, *id.* at 1073. Additionally, Defendants are alleged to have "eliminated all assistant principals[;] [] extracurricular activities [,] such as art and music[;] and the Students with Interrupted Formal Education (SIFE) program, which ensure[s] that immigrant students achieve their full potential [] and do not significantly lag behind their peers." *Id.* In sum, the Student-Plaintiffs allege that in order unconstitutionally to fund religious education the Defendants have defunded the educational services upon which the Student-Plaintiffs rely. As a result of this transfer of resources, authorized or promoted by the Defendants, the Student-Plaintiffs have "performed below their peers in state-mandated academic examinations," *id.* at 1075, and "are experiencing academic harm and will continue to experience harm to their academic careers," *id.* at 1033.

We are presented here with a novel theory of liability that the Student-Plaintiffs seek to couch in terms of an Establishment Clause violation. The allegations of injury in this case, however, preclude their fitting within the type of "direct exposure" injury that our jurisprudence has heretofore regarded as flowing from an Establishment Clause violation. The Student-Plaintiffs are

neither alleging that they are subject to a religiously infused law that prohibits them from learning, *see Epperson v. Arkansas*, 393 U.S. 97, 100 (1968), nor alleging that they are confronted by a government-sponsored religious message, *see Engel*, 370 U.S. at 423. The Student-Plaintiffs lack standing because they do not allege that their injuries were caused by a personal exposure to and confrontation with the object of the governmental action they challenge—the alleged IDEA settlement scheme.

Instead, as described above, the Student-Plaintiffs allege that they were deprived of educational services because public funds, which otherwise would have been available to them, were diverted to an unconstitutional purpose. Contrary to their assertion the Student-Plaintiffs have not been "*directly* affected" by the payment of the IDEA settlements in support of religious institutions; they have only been indirectly affected. *Schempp*, 374 U.S at 224 n.9 (emphasis added). This is so because the alleged harm—the deprivation of educational services—is merely incidental to the IDEA Settlement disbursements themselves. It does not arise out of the Student-Plaintiffs' personal interaction with the IDEA Settlement process. The Student-Plaintiffs' injury is too far removed, too attenuated, from the alleged unconstitutional component of the act of funneling public monies to

support the advancement of Orthodox Hasidic Jewish schools to constitute the type of injury cognizable and compensable as the result of an Establishment Clause violation. We hold, therefore, that the Student-Plaintiffs do not have standing to assert an Establishment Clause violation.

We have not found a case, and the Student-Plaintiffs do not point to one, where an appeals court has recognized their theory of direct exposure—where the plaintiffs' exposure is the loss of a favored governmental service or benefit caused, in part, by a diversion of public resources away from such service or benefit to support a preferred religion. This is unsurprising. The Student-Plaintiffs' injury arises out of being enmeshed in an underfunded school system, not out of being directly exposed to the alleged unconstitutional IDEA Settlements themselves. An alleged causal connection between the underfunding of the school district's budget and the alleged unconstitutional expenditures is insufficient to give rise to a direct injury. To hold otherwise would impermissibly expand the concept of direct exposure to include injuries that are unrelated to the challenged governmental act but which flow in fact from a government's

decision to fund one program or service at the expense of another.[13] This is a theory of indirect injury and recognizing it would allow plaintiffs who are only incidentally affected by a challenged governmental expenditure to assert Establishment Clause claims. [14] Viewing this injury as a direct exposure to an Establishment Clause violation is foreclosed by our jurisprudence. *See Schempp*, 374 U.S at 224 n.9; *Winn*, 563 U.S. at 142.

We fully recognize that the Student-Plaintiffs are not disinterested parties; they undoubtedly have an interest in how the District allocates its funds. Their

---

[13] Similarly, if we were to recognize that the Student-Plaintiffs have direct exposure standing here, then there would be little need for separate and distinct standing requirements for taxpayers, *see Winn*, 563 U.S. at 142 (explaining that a plaintiff must pay taxes and challenge a budgetary expenditure in order to establish taxpayer standing), because essentially all individuals, regardless of whether they pay taxes, are affected by changes in the government's budget and would therefore have standing to challenge any government expenditure—a result eschewed by our standing jurisprudence, *see e.g., Altman*, 245 F.3d at 74 (rejecting the view that an act committed by a paid municipal employee constitutes an expenditure for purposes of conferring taxpayer standing because "[n]early all governmental activities are conducted or overseen by employees whose salaries are funded by tax dollars" such that conferring "taxpayer standing on such a basis would allow any municipal taxpayer to challenge virtually any governmental action at any time").

[14] The district court's previous ruling in this case dismissing the Student-Plaintiffs' Establishment Clause claims for lack of standing to challenge the School Board's administration of Title I and Title III programs at religious schools because the Student-Plaintiffs were not directly exposed to the alleged unconstitutional Title I and Title III contracts is consistent with our analysis and articulation of the direct injury requirement.

interest, however, is similar to that of any other individual who is affected by the District's budget, regardless of whether that person is an employee, a student, a vendor, a taxpayer, or a citizen. Because the Student-Plaintiffs' theory of injury is premised on the allegations that reducing the funds available to meet the District's budget affects them as beneficiaries of the budget, the Student-Plaintiffs have suffered an injury that is common to all individuals who are affected by the budget.[15]

---

[15] Our dissenting colleague contends that the Student-Plaintiffs are distinguishable from other beneficiaries of the District's budget because as students in the District's schools "they are entitled to have the diverted funds spent on *their* educations." Diss. Op. at 7. The dissent, however, cites no authority for this proposition. While the dissent correctly points out that the New York State Constitution requires the state to provide students with a sound basic education, *id.* at 7 n.3, this alone does not entitle the Student-Plaintiffs to have the IDEA reimbursement funds or other diverted funds spent specifically on their educations. Moreover, there is no free-standing federal constitutional right to a public education that entitles the Student-Plaintiffs to a minimum level of educational services such that the deprivation of those services creates a cognizable injury. *See Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution."). Although the Student-Plaintiffs "identify the educational programs and resources formerly provided at their schools which are now unfunded," Diss. Op. at 7, this situation only reflects how the IDEA Settlements affect the District's budget and, then, how those changes in the District's budget affect the Student-Plaintiffs. It is precisely because the Student-Plaintiffs' alleged injury arises out of the effects that the IDEA Settlements have on the District's budget, and not out of the effects the IDEA Settlements have on the Student-Plaintiffs themselves, that make the Student-Plaintiffs' injury indirect. The Students-Plaintiffs' injury could be direct,

We note that the Student-Plaintiffs' claims, as pleaded, are not that the students were directly exposed to a school system that is increasingly segregated based on religion, in part because of the alleged IDEA settlement conspiracy. *See e.g., Southside Fair Hous. Comm. v. City of New York*, 928 F.2d 1336, 1342 (2d Cir. 1991) (finding sufficient, for standing purposes, allegations that the plaintiffs' neighborhood "ha[d] become increasingly and substantially segregated on racial and religious grounds, with a large proportion of the Latino and African-American population being displaced to neighborhoods outside the Area," as "[t]hey live[d] in the very neighborhood where the disputed land sales took place and claim[ed] that they [were] being displaced by the creation of an exclusive white Hasidic enclave"). The Student-Plaintiffs have abandoned their Equal Protection claim and, other than in a passing reference to increasing school segregation, they do not assert that experiencing a segregated school system contributes to their injury. Nor do the Student-Plaintiffs claim that they have "standing on the ground that they have incurred a cost or been denied a benefit

---

however, if their claim was that the underfunding of educational programs itself was an unconstitutional establishment of religion, i.e., that the Defendants decision to cancel a previously offered program had no secular purpose, primarily advanced religion, or excessively entangled the government with religious affairs. *See Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).

on account of their religion." *Winn*, 563 U.S. at 130. The Student-Plaintiffs claim that their injury arises solely out of the District's lack of funds and is premised solely on their enrollment in the District's schools.[16] This attenuated relationship among the alleged unconstitutional expenditure, the District's budget, and the Student-Plaintiffs' enrollment in the District's schools is insufficient to confer standing because the alleged unconstitutional expenditure has an effect on the Student-Plaintiffs' education that is only indirectly and incidentally related to the unconstitutionality of the expenditure.

For the reasons articulated above, we hold that the Student-Plaintiffs lack standing to assert an Establishment Clause claim against the Defendants. It is therefore unnecessary to decide whether the Defendants are entitled to absolute or qualified immunity because our decision with respect to standing renders this

---

[16] While we recognize that education "is not merely some governmental benefit indistinguishable from other forms of social welfare legislation," *Plyler*, 457 U.S. at 221, we are hesitant to recognize the Student-Plaintiffs' theory of liability — holding individual Board Member Defendants responsible for damages for educational injuries caused by a lack of resources due to an Establishment Clause violation. This theory attempts to remedy an injury that may be causally related, but is not sufficiently connected, to the unconstitutional act or within the zone of interests of the underlying constitutional prohibition. *See Elk Grove*, 542 U.S. at 12 (noting "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked" (internal quotes omitted)).

issue moot.[17] *See Morris-Hayes v. Bd. of Educ. Of Chester Union Free School Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (finding it unnecessary to decide whether defendants were entitled to qualified immunity when the court dismissed the claims on separate grounds).

## IV.  CONCLUSION

We have considered the Student-Plaintiffs' remaining arguments and find them to be without merit. We REVERSE the district court's decision and REMAND with instructions to dismiss the Student-Plaintiffs' claims against all defendants.

---

[17] To be clear, we make no determination as to the merits of the Student-Plaintiffs' claims.

14-3721-cv(L)
*Montesa, et al. v. Schwartz, et al.*

REISS, *District Judge*, dissenting:

The majority holds that Student-Plaintiffs fail to allege standing to assert 42 U.S.C. § 1983 claims because they are only indirectly affected by Defendants' alleged Establishment Clause violations. I respectfully disagree, and would affirm in part the district court's decision.[1]

The majority cabins Student-Plaintiffs' Establishment Clause claims to a "direct exposure theory" and, for that reason, addresses "only whether the Student-Plaintiffs have sufficiently pleaded a basis demonstrating their direct exposure to the unconstitutional establishment of religion." Maj. Op. at 15–16 (footnote omitted). I believe Students-Plaintiffs' claims are broader than the majority's formulation, and that the Establishment Clause does not require "direct exposure" to the unconstitutional establishment of religion. *See Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 221 (1963) ("The Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce non-

---

[1] I agree with the majority that Student-Plaintiffs cannot establish standing to challenge real estate transactions that were not consummated or the provision of a *de minimus* number of religious books.

1

observing individuals or not."). At the pleadings stage, I would find that Student-Plaintiffs adequately allege they are "directly affected by the . . . practices against which their complaints are directed." *Id.* at 224 n.9.

Although Student-Plaintiffs bear the burden of establishing standing as a jurisdictional requirement, "standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003). Indeed, "general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In determining standing, we must "accept [] all well-pleaded allegations in the complaint as true [and] draw [] all reasonable inferences in the plaintiff's favor." *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 191 (2d Cir. 2014) (alterations in original and internal quotation marks omitted) (reversing and remanding district court's dismissal of claims for lack of standing).

The majority concludes that Student-Plaintiffs fail to allege injuries that are sufficiently direct for prudential standing. The prudential standing doctrine is "in some tension with [the Supreme Court's] recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is

virtually unflagging." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (internal quotation marks omitted). At the pleadings stage, its requirements are neither stringent nor inflexible. *See Flast v. Cohen*, 392 U.S. 83, 99, 101 (1968) (observing that "[s]tanding has been called one of 'the most amorphous (concepts) in the entire domain of public law[]'" and that "the emphasis in standing problems is on whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy,' and whether the dispute touches upon 'the legal relations of parties having adverse legal interests[]'") (citation and footnote omitted). Prudential standing ensures that Student-Plaintiffs' claims "fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question[,]" a standard that, at least for pleading purposes, is satisfied here. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (internal quotation marks omitted).

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). "Primary among those evils" against which the Establishment Clause guards "have been sponsorship, financial support, and

active involvement of the sovereign in religious activity." *Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 772 (1973) (internal quotation marks omitted). "It is equally well established, however, that not every [practice] that confers an 'indirect,' 'remote,' or 'incidental' benefit upon religious institutions is, for that reason alone, constitutionally invalid." *Id.* at 771. For this reason, Establishment Clause cases are fact sensitive,[2] often requiring courts to "sift[] through the details[,]" employ "careful judgment[,]" and draw "fine distinctions[.]" *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 847-48 (1995) (O'Connor, J., concurring).

In a close case like this one, we should hesitate to dismiss Student-Plaintiffs' constitutional claims based on the application of "[s]ynthesiz[ed]" rules that emphasize narrow categories of "direct exposure[.]" Maj. Op. at 19. Establishment Clause jurisprudence does not mandate that rigid approach. To the contrary, "[b]ecause standing in Establishment Clause cases can be shown in

---

[2] In *Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014), the Supreme Court, which was sharply divided as to the merits, nonetheless unanimously agreed that whether there is a violation of the Establishment Clause is a "fact-sensitive" inquiry. 134 S. Ct. at 1825 (plurality opinion); *id.* at 1838 (Breyer, J., dissenting) ("As we all recognize, this is a 'fact-sensitive' case."); *id.* at 1851 (Kagan, J., dissenting) ("The facts here matter to the constitutional issue; indeed, the majority itself acknowledges that the requisite inquiry [is] a 'fact-sensitive' one[.]").

various ways," *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 145 (2011), "[i]f an establishment of religion is alleged to cause real injury to particular individuals, the federal courts may adjudicate the matter." *Id.* "Like other constitutional provisions, the Establishment Clause acquires substance and meaning when explained, elaborated, and enforced in the context of actual disputes." *Id.*

This court's decision in *Altman v. Bedford Central School District*, 245 F.3d 49 (2d Cir. 2001) imposes no greater burden. The *Altman* court explained that "direct exposure to the challenged activity" is only one basis for Establishment Clause standing, which, unlike the Free Exercise Clause, does not require "'proof that particular religious freedoms are infringed.'" *Altman*, 245 F.3d at 72 (quoting *Schempp*, 374 U.S. at 224 n.9). As an example of "direct exposure," the *Altman* court pointed to "students attending a public school, and their parents, hav[ing] standing to challenge a program of Bible reading in the school because they are 'directly affected by the laws and practices against which their complaints are directed[.]'" *Id.* (quoting *Schempp*, 374 U.S. at 224 n.9). In this dicta, the *Altman* court did not suggest that "direct exposure" required the students to actually be *exposed to* Bible reading. *Altman* thus reflects the

important distinction that "a violation of the Free Exercise Clause is predicated on coercion while the Establishment Clause violation need not be so attended." *Schempp*, 374 U.S. at 223. For this same reason, a plaintiff's ability to avoid direct exposure is not a defense to an Establishment Clause violation. *See id.* at 224-25 ("[T]he fact that individual students may absent themselves [from Bible reading in school] upon parental request[] . . . furnishes no defense to a claim of unconstitutionality under the Establishment Clause.").

As the *Altman* court further recognized, the Establishment Clause does not require personal confrontation with, or constraint by, religious tenets, practices, or expressions; it requires only some "direct injury" as opposed to an "indefinite" injury indistinguishable from that suffered by the public at large: "[t]he party who invokes the power must be able to show, not only that the [practice] is invalid but that he has sustained or is immediately in danger of sustaining *some direct injury* as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Altman*, 245 F.3d at 72 (quoting *Doremus v. Bd. of Educ. of Borough of Hawthorne*, 342 U.S. 429, 434 (1952)) (emphasis supplied).

In this case, each Student-Plaintiff attends one of the District's public schools. Collectively, they challenge Defendants' alleged systematic diversion of state and local taxes, federal funds, and grant monies in order to finance special education at Yeshivas. They identify the educational programs and resources formerly provided at their schools which are now unfunded, explain how they are entitled to have the diverted funds spent on *their* educations,[3] and claim Defendants' alleged diversion of resources deprives them of their "right to a sound basic education by the laws and policies of the federal government and the State of New York." Joint App'x at 1072. Student-Plaintiffs allege they can demonstrate through budgetary records and academic test scores a direct causal link between Defendants' alleged diversion of District funds and the academic harm they suffer. Accepting these allegations as true and drawing all reasonable

---

[3] Although the majority correctly points out "there is no free-standing federal constitutional right to a public education that entitles the Student-Plaintiffs to a minimum level of educational services[,]" Maj. Op. at 25 n.15, the New York Constitution provides that the New York Legislature "shall provide for the maintenance and support of a system of free common schools, wherein all the children of [that] state may be educated." N.Y. Const. art. XI, § 1; *see also Bd. of Educ., Levittown Union Free Sch. Dist. v. Nyquist*, 439 N.E.2d 359, 369 (N.Y. 1982) (interpreting the New York Constitution to require provision of "a sound basic education"). In any event, an Establishment Clause claim does not require Student-Plaintiffs to establish that the violation deprived them of a free-standing federal constitutional right.

7

inferences in Student-Plaintiffs' favor, at the pleading stage, their causation allegations are not implausible. *See Plyler v. Doe*, 457 U.S. 202, 222 (1982) (recognizing that the deprivation of an education exerts an "inestimable toll . . . on the social economic, intellectual, and psychological well-being of the individual").

In characterizing Student-Plaintiffs' injuries as "too far removed, too attenuated, from the alleged unconstitutional component of the act of funneling public monies to support the advancement of Orthodox Hasidic Jewish schools[,]" Maj. Op. at 22–23, the majority ignores the fact that the Student-Plaintiffs' educational harm arises directly out of the allegedly unconstitutional acts, the general public, including taxpayers, are not suffering this same injury, and Student-Plaintiffs could not assert Establishment Clause claims if the District diverted the same funds for a secular purpose. As a result, Student-Plaintiffs' alleged injuries are not "similar to that of any other individual who is affected by the District's budget, regardless of whether that person is an employee, a student, a vendor, a taxpayer, or a citizen[,]" Maj. Op. at 25, and they do not allege a "generalized grievance[] . . . [that would be] most appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 475 (internal

quotation marks omitted). Moreover, no other class of plaintiffs can assert this same claim or is better situated to assert a deprivation of this same interest. *See Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99-100 (1979) (noting that "under the prudential principles[,] . . . the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim").

Although the majority points out that the Student-Plaintiffs fail to cite precedent authorizing their Establishment Clause claim, it is equally true that there is no precedent prohibiting it. Accordingly, "[r]ather than attempting to define the outer limits" of the Establishment Clause "on the basis of the present record, the Court's opinion [should] wisely permit[ ] the parties . . . to create a factual record that will inform that decision." *United States v. Georgia*, 546 U.S. 151, 160 (2006) (Stevens, J., concurring) (footnote omitted); *see also Rosenberger*, 515 U.S. at 838-39 ("If there is to be assurance that the Establishment Clause retains its force in guarding against those governmental actions it was intended to prohibit, we must in each case inquire first into the purpose and object of the governmental action in question and then into the practical details of the

program's operation."). "Tenuous theories of liability are better assayed in the light of actual facts than in pleader's supposition." *Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979); *see also Braden v. Univ. of Pittsburgh*, 477 F.2d 1, 4-5 (3d Cir. 1973) ("It would perhaps be possible for us to decide this last issue on the present record but we think we should not do so. Very important constitutional questions are presented and the Supreme Court has repeatedly informed us that such difficult issues should not be decided except upon a full record and after adequate hearing.") (collecting Supreme Court cases).

For the reasons set forth above, I would affirm in part the district court's conclusion that Student-Plaintiffs have adequately alleged standing at the pleadings stage, and I would defer a determination of qualified immunity.[4]

---

[4] *See Johnson v. Jones*, 515 U.S. 304, 317 (1995) (observing that "an interlocutory appeal concerning [the factual basis for qualified immunity] in a sense makes unwise use of appellate courts' time, by forcing them to decide in the context of a less developed record, an issue very similar to one they may well decide anyway later, on a record that will permit a better decision" and concluding that "we are persuaded that [i]mmunity appeals . . . interfere less with the final judgment rule if they [are] limited to cases presenting neat abstract issues of law") (internal quotation marks omitted).