JEWISH PEOPLE FOR THE BETTERMENT OF WESTHAMPTON BEACH, Arnold Sheiffer, Estelle Lubliner, Plaintiffs–Appellants,

v.

The VILLAGE OF WESTHAMPTON BEACH, East End Eruv Association, Inc., Verizon New York, Inc., and the Long Island Lighting Company, d/b/a LIPA, Defendants–Appellees.

Docket No. 14–1441.

United States Court of Appeals, Second Circuit.

Argued: Nov. 21, 2014.

Decided: Jan. 6, 2015.

Reissued as Opinion: Feb. 11, 2015.

Jonathan Sinnreich, with Timothy F. Hill, Sinnreich Kosakoff & Messina LLP, Central Islip, NY, for Appellants.

Yehudah L. Buchweitz, with Robert G. Sugarman, Weil, Gotshal & Manges LLP, New York, NY, for Appellee East End Eruv Association, Inc.

Erica S. Weisgerber, with Michael E. Wiles, Debevoise & Plimpton LLP, New

York, NY, for Appellee Verizon New York, Inc.

Zachary Murdock, with David Lazer, Lazer Aptheker Rosella & Yedid PC, Melville, NY, for Appellee Long Island Lighting Company d/b/a LIPA.

Before JACOBS, RAGGI, and LIVINGSTON, Circuit Judges.

PER CURIAM:

Plaintiffs Arnold Sheiffer, Estelle Lubliner, and Jewish People for the Betterment of Westhampton Beach filed this action for declaratory and injunctive relief to prevent the creation in Westhampton Beach of an "eruv," a delineated geographic area significant to certain adherents of Judaism. Plaintiffs now appeal from judgments entered on February 4, 2013, and May 21, 2013, in the United States District Court for the Eastern District of New York (Leonard D. Wexler, J.) in favor of East End Eruv Association, Inc. ("EEEA"), Verizon New York, Inc. ("Verizon"), and Long Island Lighting Company ("LIPA") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). Plaintiffs contend that the district court erred as a matter of law in concluding that their complaint failed to state plausible claims for relief under 42 U.S.C. § 1983 for violation of the Establishment Clause of the United States Constitution. *See* U.S. Const. amend. I. The argument is without merit, and we therefore affirm.

## I

In 2010, EEEA entered into licensing agreements with Verizon and LIPA that allowed EEEA, for a fee, to finance, install, and maintain plastic strips known as "lechis" on utility poles owned by Verizon and LIPA and located in Westhampton Beach, New York.[1] The agreements are not exclusive; LIPA may grant similar attachment rights to other parties.

Plaintiffs allege that the purpose of these contracts is to allow EEEA to establish an "eruv," *i.e.*, a "continuous physical boundary" and "demarcation of a defined geographic area within which adherents subscribing to a certain interpretation of Jewish law believe that they may perform certain activities that are otherwise prohibited on the Jewish Sabbath and Yom Kippur." Compl. ¶ 19. Such an eruv will be created by attaching plastic strips or "lechis," "upwards of forty inches in length," to Verizon's and LIPA's utility poles. *Id.* ¶ 21. Plaintiffs assert that "[t]he eruv ... will not go unnoticed" but, rather, "will be a constant and ever-present symbol, message and reminder to the community at large, that the secular public spaces of the Village have been transformed for religious use and identity." *Id.* ¶ 1. Plaintiffs further allege that they "will be confronted with the EEEA's religious display on a daily basis." *Id.* ¶ 5.

Based on these allegations, plaintiffs sought (1) a declaration that the proposed eruv violates the Establishment Clause, and (2) an injunction preventing its cre-

---

1. The license agreement between LIPA and EEEA permitting the EEEA to affix lechis to LIPA's utility poles is referenced in the complaint and is integral to its allegations. *See* Compl. ¶ 42; *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir.2011) (a document is "integral" to a complaint if the complaint "relie[s] heavily upon its terms and effect") (internal quotation marks omitted). This agreement establishes (and plaintiffs do not contest) that the EEEA will finance, install, and maintain the strips. *See* License Agreement between Long Island Lighting Company D/B/A LIPA Through Its Agent National Grid Electric Services LLC and East End Eruv Association, Inc., Article V, § 1, Verizon Compl. Ex. B, *Verizon N.Y., Inc. v. Vill. of Westhampton Beach*, No. 11–252–cv (E.D.N.Y. Jan. 18, 2011), ECF No. 1.

ation. EEEA and Verizon moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which the district court granted on February 4, 2013. LIPA then moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which the district court granted on May 21, 2013. Plaintiffs dismissed the action without prejudice as to the remaining defendant, Westhampton Beach, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). This timely appeal followed.

## II

Defendants raise two jurisdictional challenges, neither of them persuasive.

### A

■ Defendants argue that the order appealed from was not a final judgment under 28 U.S.C. § 1291, because a stipulation filed by plaintiffs dismissed their claims *without prejudice* against defendant Village of Westhampton Beach. But in this Circuit, a plaintiff may cure such a defect in appellate jurisdiction by disclaiming an intent to revive the dismissed claim (effectively, converting it to a dismissal *with prejudice*, for reasons of estoppel). *See Leung v. N.Y. Univ.*, 495 Fed.Appx. 124, 126 (2d Cir.2012) (citing *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 225 (2d Cir. 2006)). Plaintiffs' reply brief disclaims any intent to revive their dismissed claim against the Village of Westhampton Beach. So that potential obstacle to appellate jurisdiction is removed.

### B

■ Defendants also argue that plaintiffs lack standing under Article III, which

limits the judicial power of the United States to the resolution of cases and controversies. U.S. Const. art. III, § 2. To satisfy this jurisdictional requirement, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir.2009) (internal quotation marks omitted).

■ We have found standing in the Establishment Clause context for a plaintiff who alleged that he "was made uncomfortable by direct contact with religious displays." *Id.* at 491. Plaintiffs here allege that "[t]he eruv ... will not go unnoticed; rather, it will be a constant and ever-present symbol, message and reminder to the community at large, that the secular public spaces of the Village have been transformed for religious use and identity." Compl. ¶ 1. Plaintiffs, in particular, allege that they "will be confronted with the ... religious display on a daily basis." *Id.* ¶ 5. Those allegations, such as they are, suffice under our precedents.

Defendants seek to distinguish the eruv from the religious displays at issue in *Cooper* on the ground (*inter alia*) that the eruv is far less obtrusive, and that—contrary to plaintiffs' allegations—the eruv does not convey any message to the uninitiated. But those fact-based arguments are insufficient at the pleadings stage, in which we must assume the truth of plaintiffs' well-pleaded factual allegations.[2] Other courts have found no standing problem in

---

**2.** The parties submitted (extensive) factual material outside the pleadings. While the district court did not explicitly exclude this material, its decisions dismissing plaintiffs' claims give us no "reason to believe that the

extrinsic evidence actually affected [its] decision[s]" and we accordingly conclude that the extrinsic material was "implicitly excluded." *See Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir.1999).

challenges to government involvement in the construction of an eruv. *See ACLU of N.J. v. City of Long Branch,* 670 F.Supp. 1293, 1294 (D.N.J.1987).

## III

On the merits, however, plaintiffs have failed to state a claim for a violation of the Establishment Clause against any of defendants-appellees.

### A

■ Two of the remaining three defendants—Verizon New York, Inc., and the East End Eruv Association, Inc.—are plainly not state actors. *See* Compl. ¶ 11 ("EEEA is a not-for-profit-corporation"); *id.* ¶ 13 ("Verizon New York Inc. is a ... subsidiary of Verizon Communications, Inc., a publicly held corporation."). The Establishment Clause is a check on the power of our government. *See, e.g., Cooper,* 577 F.3d at 491. So all claims against these defendants must be dismissed for lack of state action.

### B

The remaining defendant, LIPA, does not dispute that, as "a political subdivision of the State of New York," Compl. ¶ 12, it is a state actor. So we turn to the merits of plaintiffs' Establishment Clause claims against LIPA.

■ Although "much criticized," the *Lemon* test still governs cases alleging violations of the Establishment Clause. *Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.,* 760 F.3d 227, 238 n. 12 (2d Cir.2014). Under *Lemon,* for "government action to satisfy the neutrality principle of the Establishment Clause, it must (1) 'have a secular purpose,' (2) have a 'principal or primary effect' that neither advances nor inhibits religion,' and (3) 'not foster an excessive government entanglement with

religion.' " *Id.* at 238 (quoting *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)) (internal ellipses omitted).

An eruv is a "demarcation of a defined geographic area within which adherents subscribing to a certain interpretation of Jewish law believe that they may perform certain activities that are otherwise prohibited on the Jewish Sabbath and Yom Kippur." Compl. ¶ 19. It is undisputed that the Westhampton eruv was delineated by "nearly invisible" staves and wires attached to utility poles. *Id.* ¶¶ 1, 20. Plaintiffs do not allege that these staves contain any overtly religious features that would distinguish them to a casual observer as any different from strips of material that might be attached to utility poles for secular purposes.

■ Plaintiffs have not plausibly pleaded that there was no secular purpose to the governmental action here: LIPA entered into a paid licensing agreement allowing the installation of items of religious significance on utility poles. While plaintiffs repeatedly state in their complaint that the *establishment of an eruv* serves no secular purpose, the complaint does not contain similar allegations with regard to *LIPA's* action of permitting the EEEA to attach lechis to its utility poles, and does not allege that LIPA granted access to its utility poles in a non-neutral manner. Neutral accommodation of religious practice qualifies as a secular purpose under *Lemon. See, e.g., Good News Club v. Milford Cent. School,* 533 U.S. 98, 114, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001). And other courts have held that, absent evidence that the erection of an eruv is facilitated in a non-neutral manner, permitting an organization to attach lechis to utility poles serves the secular purpose of accommodation. *See, e.g., Long Branch,* 670 F.Supp. at 1295–96.

In religious display cases, *Lemon's* second consideration collapses into the question whether a "reasonable observer of the display in its particular context [would] perceive a message of governmental endorsement or sponsorship of religion." *Skoros v. City of New York*, 437 F.3d 1, 29 (2d Cir.2006). No reasonable observer who notices the strips on LIPA utility poles would draw the conclusion that a state actor is thereby endorsing religion, even assuming that a reasonable observer is aware that a state actor (LIPA) was the entity that contracted with a private party to lease the space.

Finally, it is undisputed that private parties will finance, install, and maintain the strips; so there is no risk of "excessive" government entanglement with religion.

Compared with many government actions that have survived the *Lemon* test, LIPA's accommodation of the eruv has *more* of a secular purpose, causes *less* of an advancement of religion, and fosters *less* church-and-state entanglement. *See, e.g., Good News Club*, 533 U.S. at 103–04, 121 S.Ct. 2093 (allowing a "private Christian organization for children" to hold meetings at a public school "for the purpose of conducting religious instruction and Bible study"); *Lynch v. Donnelly*, 465 U.S. 668, 671, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (allowing a Christmas nativity scene display, on public property, that included "the Infant Jesus, Mary and Joseph, angels, shepherds, kings, and animals," up to five feet tall); *Newdow v. Peterson*, 753 F.3d 105, 107–08 (2d Cir. 2014) (upholding federal statutes requiring the motto "in God We Trust" to appear on all U.S. currency, reasoning that the motto's "secular purpose" is a "reference to our religious heritage"). A fortiori, LIPA's action permitting the EEEA to erect the eruv is not an unconstitutional establishment of religion.

Every court to have considered whether similar government actions violate the Establishment Clause has agreed that they do not. *See Long Branch*, 670 F.Supp. at 1295 ("The city allowed the eruv to be created to enable observant Jews to engage in secular activities on the Sabbath. This action does not impose any religion on the other residents of Long Branch."); *Smith v. Community Bd. No. 14*, 128 Misc.2d 944, 491 N.Y.S.2d 584, 586 (N.Y.Sup.Ct.1985) (allowing private parties to construct an eruv on public property "did not establish religion but [was] a valid accommodation to religious practice"); *see also Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 176 (3d Cir.2002) (explaining that a "reasonable, informed observer" of an eruv "would not perceive an endorsement of Orthodox Judaism").

## CONCLUSION

For the foregoing reasons, and finding no merit in plaintiffs' other arguments, we hereby **AFFIRM** the judgments of the district court.