*Axon v. Fla.'s Nat. Growers, Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand twenty.

PRESENT:   JOHN M. WALKER, JR.,
                      RICHARD J. SULLIVAN,
                              *Circuit Judges*,
                      ALISON J. NATHAN,
                              *District Judge.*\*

------------------------------------------------------------------

ALEXANDRA AXON, ON BEHALF OF
HERSELF AND ALL OTHERS SIMILARLY
SITUATED,

     *Plaintiff-Appellant*,

     v.                                                      No. 19-203-cv

FLORIDA'S NATURAL GROWERS, INC.,
CITRUS WORLD, INC.,

---

\* Judge Alison J. Nathan, of the United States District Court for the Southern District of New York, sitting by designation.

-------------------------------------------------------------------

FOR APPELLANT:                      KIM E. RICHMAN, Richman Law Group, New York, NY.

FOR APPELLEES:                     DANIEL H. COULTOFF (Christina Y. Taylor, *on the brief*), Latham, Shuker, Eden & Beaudine, LLP, Orlando, FL.

                                             Tom M. Fini, *on the brief*, Catafago Fini LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Allyne R. Ross, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Alexandra Axon commenced this putative class action against Florida's Natural Growers, Inc. and its parent company, Citrus World, Inc. (collectively, "Florida's Natural" or "Defendant"), asserting claims under New York's consumer protection statutes prohibiting deceptive business practices and false advertising, as well as common law claims for breach of express warranty and unjust enrichment. This case centers on the appearance of the word "natural" in

the brand name "Florida's Natural." Specifically, Axon alleges that the use of the term "natural" in Defendant's brand name – the term appears nowhere else on Defendant's products or packaging – is deceptive because its orange-juice products contain trace amounts of glyphosate, an herbicide used to kill weeds that is not a natural ingredient. Axon appeals from a judgment of the district court (Ross, *J.*) dismissing her complaint for failure to state a claim and denying as futile her motion for leave to amend her complaint.

On appeal, Axon challenges both rulings, contending that the court made improper evidentiary determinations, applied too strict a pleading standard, erred in analyzing the deceptive significance of Defendant's branding, and incorrectly dismissed her unjust enrichment claim as duplicative of her other claims. Because the district court correctly determined that Axon's complaint fails to state a claim as a matter of law – a reasonable consumer would not be misled by the challenged statement – and did not err in denying her motion for leave to amend, we affirm. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

I.

Florida's Natural contends that Axon lacks standing to seek injunctive relief

3

or damages. We disagree, at least with respect to Axon's standing to seek damages.[1]

"The existence of standing is a question of law that we review *de novo*." *Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir. 2004). To establish Article III standing, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015)). "For each form of relief sought, a plaintiff 'must demonstrate standing separately.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). For statutory standing, "the question is whether the plaintiff 'has a cause of action under the statute.'" *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 201 (2d Cir. 2014) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)).

---

[1] Whether plaintiffs seeking injunctive relief for consumer deception have standing where they allege that they would buy the products in the future if not mislabeled is unsettled in this Circuit. *See Podpeskar v. Dannon Co.*, No. 16-cv-8478 (KBF), 2017 WL 6001845, at *4 n.2 (S.D.N.Y. Dec. 3, 2017) (collecting cases). Because we conclude that Axon has standing to seek damages and that her claims fail as a matter of law, we need not resolve that question or determine whether Axon has standing to seek injunctive relief.

Defendant maintains that Axon does not have Article III standing or statutory standing under New York law to seek damages because she fails to establish an injury-in-fact. As for Article III standing, Axon has suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury – paying a premium – as a result. *See, e.g., Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 92 (2d Cir. 2018). As for statutory standing, Axon has alleged that "the price of the product was inflated as a result of defendant's deception," which meets the injury requirement. *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (3d Dep't 2007). Furthermore, Axon's failure to identify the prices of competing products to establish the premium that she paid "is not fatal to [her] claim" at this stage of the proceedings. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 481–82 (S.D.N.Y. 2014) (collecting cases); *see also Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999); *Cox v. Microsoft Corp.*, 809 N.Y.S.2d 480, 2005 WL 3288130, at *5 (Sup. Ct. July 29, 2005).

II.

"[T]he [d]istrict [c]ourt's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6)" is reviewed *de novo, Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 252 (2d Cir. 2018), as is the denial of a motion for

leave to amend on the basis of futility, *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

Axon asserts that the district court improperly weighed the evidentiary value of certain survey evidence that she submitted with her motion for leave to amend her complaint, failed to apply a liberal pleading standard, and did not view her allegations in the light most favorable to her. The district court, however, did not engage in any factfinding or weighing of evidence in determining that the survey did not render Axon's claims plausible. Instead, the court concluded that the proposed amended complaint's conclusory allegations were unsupported by the survey.

New York's General Business Law prohibits the use of "[d]eceptive acts or practices" and "[f]alse advertising" "in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §§ 349 and 350. To survive a motion to dismiss, "[p]laintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled'" by the relevant statements. *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Furthermore, where "the allegations of [a] [c]omplaint

6

are materially inconsistent with the" evidence a plaintiff relies on to make those allegations, we may "easily conclude that [p]laintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).

The survey that accompanied Axon's proposed amended complaint did not specifically address any aspect of Florida Natural's products or packaging. Moreover, the conclusions that Axon asserts based on the survey are not supported by it. The district court properly determined that the survey concerned the use of a "natural label," rather than a brand name using the word "natural." App'x at 205. Although the survey "does not include details on how it defined . . . a 'natural label,'" *id.*, nothing in the survey suggests that it defined "label" broadly to include a product's brand name. Consequently, even without making findings of fact regarding the survey, the court properly determined that the claims Axon asserted based on the survey were facially unsupported by it. Put simply, the survey does not render Axon's claims plausible even taking the allegations of the proposed amended complaint as true and viewing them in the light most favorable to her. Accordingly, the district court did not make impermissible evidentiary

7

determinations or fail to apply the correct pleading standard when it denied Axon's motion for leave to amend her complaint.

III.

Axon next contends that the district court created an improper distinction between products whose brand name contains a "natural" representation and products that make "natural" representations apart from the brand name. But the district court properly analyzed the Florida's Natural packaging as a whole in analyzing whether it was potentially deceptive or misleading, determining that no reasonable consumer would be misled into believing that Defendant's products did not contain any trace amounts of glyphosate. *See Frink*, 714 F.3d at 742 ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). The court noted that the term "natural" occurred only within the brand name "Florida's Natural" and nowhere else on the packaging. *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 184 (E.D.N.Y. 2018). The packaging does not describe the orange juice as "natural" on a stand-alone label or as "100% natural." Instead, Defendant's packaging represents that their products are "100% Orange Juice," "NOT FROM CONCENTRATE," and "NON-GMO." App'x at 9. These representations provide context for the

8

"Florida's Natural" brand name, and Axon does not challenge their veracity. Having considered the brand name in context, the district court concluded "that it is not plausible to allege that a reasonable consumer would interpret the brand label 'Florida's Natural' as meaning that the product contains no traces of glyphosate" as a result of the planting and cultivation of oranges in its product. *Axon*, 354 F. Supp. 3d at 183. Contrary to Axon's characterizations of the district court's analysis, the court did not conclude that a brand name can never be misleading, but merely performed the requisite objective reasonable consumer inquiry under the circumstances of this case.

IV.

Axon maintains that the district court improperly concluded that a claim based on a "natural" label is not plausible if the product contains "unnatural contaminants," as opposed to "unnatural ingredients." Axon Br. at 5, 22–24. First, we agree with the district court that the presence of glyphosate as a contaminant in Defendant's products, rather than an intentionally-added ingredient, bolsters the conclusion that a reasonable consumer, viewing the brand name "Florida's Natural," would not make assumptions regarding the presence or absence of trace amounts of glyphosate. *Axon*, 354 F. Supp. 3d at 183.

Second, the district court was correct to distinguish the cases that Axon cited because those cases involved different representations, such as "pure" or "100% natural," and allegations that the defendant *added* unnatural ingredients to its products. *Id.* at 183–84. Unlike "natural," the words "pure" and "100% natural" indicate the absolute absence of contaminants. *See, e.g., Pure*, Merriam-Webster Dictionary, http://merriam-webster.com/dictionary/pure (defining "pure" as "free from dust, dirt, or taint"). And Axon makes no allegation that Defendant adds glyphosate as an artificial/synthetic ingredient to its products.

Third, Axon is incorrect that the district court speculated about "how and when" glyphosate entered the production process. Axon's complaint and proposed amended complaint themselves establish that glyphosate is introduced through the growing process. She alleges that glyphosate (1) is "a synthetic biocide frequently used to kill weeds;" (2) was invented by "Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup;" and (3) "is not a 'Natural' method of growing or harvesting oranges." App'x at 185, 191. Consequently, the court's characterization of glyphosate's presence in Florida Natural's orange juice as "trace amounts of a commonly used pesticide introduced early in the production process" accords with Axon's allegations and is not an

10

evidentiary finding regarding the source of glyphosate. *Axon*, 354 F. Supp. 3d at 183.

Axon thus fails to demonstrate any error in the district court's analysis of the proposed amended complaint.

V.

Axon finally asserts that the district court improperly dismissed her unjust enrichment claim as duplicative of her breach of warranty/implied contract claim, arguing that "a claim for unjust enrichment may survive, despite a claim for warranty, when there is doubt as to the existence of the warranty." Axon's Br. at 5.

But while it is true that a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim, *see Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996), the unjust enrichment claim here fails for the same reasons that Axon's other claims do – namely, that she has not alleged a fraud that would render Florida's Natural's enrichment "unjust," *see Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982). Accordingly, we affirm the district court's dismissal of Axon's alternative unjust enrichment claim.

\* \* \*

11

We have considered Axon's remaining contentions and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court