*Citizens United To Protect Our Neighborhoods v. Village of Chestnut Ridge*

# 122United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued:  May 4, 2023
Decided:  April 5, 2024

No. 22-2710

---

CITIZENS UNITED TO PROTECT OUR NEIGHBORHOODS,
HILDA KOGUT, ROBERT ASSELBERGS, CAROLE GOODMAN,

*Plaintiffs-Appellants,*

*v.*

VILLAGE OF CHESTNUT RIDGE, NEW YORK,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of New York
No. 19-cv-3461, Nelson S. Román, *Judge.*

---

Before:        KEARSE, JACOBS, and SULLIVAN, *Circuit Judges.*

Citizens United To Protect Our Neighborhoods ("CUPON") and Hilda Kogut, Robert Asselbergs, and Carole Goodman (the "Individual Plaintiffs" and, together with CUPON, "Plaintiffs") appeal from a judgment dismissing their complaint, which alleged that the Village of Chestnut Ridge violated the Establishment Clause of the First Amendment by enacting a new zoning law relating to places of worship in 2019.  Specifically, the district court (Román, *J.*)

found that none of the Plaintiffs had constitutional standing to pursue the claim, as (1) the Individual Plaintiffs lacked municipal-taxpayer, direct-harm, or denial-of-benefits standing and (2) CUPON lacked associational or organizational standing. Because we agree that neither the Individual Plaintiffs nor CUPON had any form of standing, we **AFFIRM** the district court's judgment.

AFFIRMED.

MICHAEL B. DE LEEUW, Cozen O'Connor, New York, NY (Marci A. Hamilton, Law Office of Marci A. Hamilton, Washington Crossing, PA, *on the brief*), *for Plaintiffs-Appellants*.

MATTHEW W. LIZOTTE (Donald J. Feerick, Jr., *on the brief*), Feerick Nugent MacCartney PLLC, South Nyack, NY, *for Defendant-Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Citizens United To Protect Our Neighborhoods ("CUPON") and Hilda Kogut, Robert Asselbergs, and Carole Goodman (the "Individual Plaintiffs" and, together with CUPON, "Plaintiffs") appeal from a judgment dismissing their complaint, which alleged that the Village of Chestnut Ridge (the "Village") violated the Establishment Clause of the First Amendment by enacting a new zoning law relating to places of worship in 2019. Specifically, the district court (Román, *J.*) found that none of the Plaintiffs had constitutional standing to pursue the claim, as (1) the Individual Plaintiffs lacked municipal-taxpayer, direct-harm, or denial-of-benefits standing and (2) CUPON lacked associational or

2

organizational standing. Because we agree that neither the Individual Plaintiffs nor CUPON had any form of standing, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

The Village is a municipal corporation, located within the Town of Ramapo in Rockland County, New York, and zoned primarily for single-family residences.[1] Between the date of the Village's incorporation in 1986 and 2019, the Village operated under one set of zoning laws. Under that original regime, all places of worship were required to obtain a special permit for religious use and receive site planning approval from the Village's Planning Board. In 2017, at the urging of the Orthodox Jewish Coalition of Chestnut Ridge (the "OJC"), the Village began the process of amending its zoning laws so that places of worship could more easily be built in Village neighborhoods, accommodating the need of Orthodox Jewish observers "to pray within walking distance of their homes." J. App'x at 38 (Compl. ¶ 104). After the OJC provided a draft of proposed amendments to the Village in August 2017, the OJC, the Village, and an outside firm hired by the Village worked in concert to refine the OJC's proposal.

---

[1] These facts are drawn from Plaintiffs' complaint and are accepted as true for the purposes of this opinion. *See, e.g.*, *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021).

In February 2018, the proposed amendments to the Village's zoning laws were publicly disclosed at a Village Board meeting. The Planning Board then issued a memorandum in May 2018 regarding the proposed amendments, critiquing certain provisions and the "negative[]" impact they could have on the Village. *Id.* at 30 (Compl. ¶ 64). In the wake of that memorandum, a series of contentious public meetings were held. Ultimately, the Village Board passed revised amendments in February 2019 (the "New Zoning Law"). According to Plaintiffs, the New Zoning Law established three categories of use: "residential gathering place[s], neighborhood places of worship, and community places of worship." *Id.* at 36 (Compl. ¶ 93); *see also id.* (Compl. ¶ 94) (defining "residential gathering place" as a dedicated portion of a one-family detached residence used for large gatherings of between fifteen and forty-nine people more than twelve times a year); *id.* (Compl ¶ 96) (defining "neighborhood place of worship" as "a structure [used] for regular organized religious assembly with a total floor area up to 10,000 square feet"); *id.* at 37 (Compl. ¶ 97) (defining "community place of worship" as "a structure [used] for regular organized religious assembly with a total floor area of more than 10,000 square feet"). For residential gathering places and neighborhood places of worship, the New Zoning Law provided "automatic

4

blanket variance[s] for maximum development coverage of [ten] percent more than for other, nonreligious uses." *Id.* at 36–37 (Compl. ¶¶ 94, 96). Additionally, the New Zoning Law allowed the owners of residential gathering places "to use off-site parking facilities on private property, including residential driveways in different ownership, or parking on public streets[,] within 1,500 feet of the lot . . . for up to [fifty] percent of [their] required parking." *Id.* at 36 (Compl. ¶ 95). As a result of these changes, Plaintiffs feared that the New Zoning Law would "radically transmogrif[y] the character of the Village." *Id.* at 22 (Compl. ¶ 27).

In April 2019, the Individual Plaintiffs (all residents of the Village) and CUPON – a civic membership organization to which the Individual Plaintiffs belong – filed the instant action against the Village. Plaintiffs' complaint alleges that the Village's enactment and enforcement of the New Zoning Law violates the Establishment Clause and seeks injunctive relief and a declaration that the law is unconstitutional. *See, e.g., id.* at 17 (Compl. ¶ 2) ("In enacting the [New Zoning Law], the Village affirmatively acted to give religious uses a preferred status" and thus "[t]he enactment and enforcement of the [New Zoning Law] violates the Establishment Clause."); *id.* at 40 (Compl. ¶ 116) ("[The Village's] practices of favoring religious uses through the implementation of blanket variances in the

5

[New Zoning Law] constitutes the promotion and endorsement of religious uses over secular uses in violation of the Establishment Clause."). In response, the Village moved to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and the OJC (among other entities) moved to intervene pursuant to Federal Rule of Civil Procedure 24. The district court dismissed the complaint without prejudice under Rule 12(b)(1), concluding that each Plaintiff lacked constitutional standing. Having so held, the district court denied the OJC's motion to intervene as moot. This appeal followed.

## II. DISCUSSION

A district court properly dismisses an action for lack of subject-matter jurisdiction under Rule 12(b)(1) "if the court lacks the statutory or constitutional power to adjudicate it, such as when the plaintiff[s] lack[] constitutional standing to bring the action." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (internal quotation marks omitted). We review a district court's Rule 12(b)(1) dismissal *de novo*, determining whether the plaintiffs "allege[d] facts that affirmatively and plausibly suggest" that they had standing to sue, construing the complaint in their favor and accepting as true all material factual allegations contained therein. *Id.* (internal quotation marks omitted); *see also Rumsfeld v. Forum*

6

*for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."). Applying that standard, we conclude that the district court correctly dismissed Plaintiffs' complaint for lack of standing.

### A. Municipal-Taxpayer Standing

To establish constitutional standing under Article III, a plaintiff generally must establish (1) an injury in fact, defined as an invasion of a legally protected interest that is concrete, particularized, and actual or imminent; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Nevertheless, because the harm associated with the unconstitutional promotion of religion is "often inherently generalized," "[o]ur jurisprudence has developed three distinct theories of standing entitling an individual to pursue a claim that the Establishment Clause has been violated." *Montesa v. Schwartz*, 836 F.3d 176, 195–96 (2d Cir. 2016).

One of these doctrines is municipal-taxpayer standing, under which courts presume that "[t]he interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their

7

misuse is not inappropriate." *Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923). We have held that a municipal taxpayer has standing to assert an Establishment Clause claim if he can show "a measurable appropriation or loss of revenue attributable to the challenged activit[y]." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 74 (2d Cir. 2001); *see also Bd. of Educ. of the Mt. Sinai Union Free Sch. Dist. v. N.Y. State Tchrs. Ret. Sys.*, 60 F.3d 106, 110–11 (2d Cir. 1995); *United States v. City of New York*, 972 F.2d 464, 466, 470–71 (2d Cir. 1992). We have also made clear, however, that a plaintiff must show that the defendant made the appropriation "solely for the activities that [the] plaintiff[]" challenges. *Altman*, 245 F.3d at 74. On that basis, we have rejected attempts to assert taxpayer standing merely because a municipality's "paid employees" spent time on the challenged activities. *Id.* (internal quotation marks omitted). Indeed, "[t]o confer taxpayer standing on such a basis would allow any municipal taxpayer to challenge virtually any governmental action at any time," since "[n]early all governmental activities are conducted or overseen by employees whose salaries are funded by tax dollars." *Id.*

Like the district court, we conclude that none of the Individual Plaintiffs have suffered an injury sufficient to confer municipal taxpayer standing.

8

Although the complaint specifies that the Individual Plaintiffs each pay municipal taxes, it alleges no facts plausibly suggesting that there is any "measurable appropriation or loss of revenue attributable to" the Village's challenged activities – i.e., the enactment and enforcement of the New Zoning Law. *Id.* Although Plaintiffs suggest that the Village is losing revenue under the New Zoning Law because religious organizations no longer need to pay fees associated with variances, we do not find that to be a reasonable inference based on the facts alleged in the complaint, which do not reference variance fees. If anything, the complaint alleges facts that *undermine* any inference that the Village was generating meaningful revenue from variance applications under the old zoning regime, since the Village confirmed "that no applications for permits or variances were being made" before the New Zoning Law was adopted. J. App'x at 33 (Compl. ¶ 78).

Similarly, we reject Plaintiffs' contention that municipal-taxpayer standing is satisfied because the Village dispersed funds in order to pass the New Zoning Law. *See id.* at 25–26, 40 (Compl. ¶¶ 44–48, 50, 117) (alleging that the Village hired a firm for planning services, which sent the Village invoices for the time spent in various activities, such as reviewing drafts of the New Zoning Law and meeting

9

with representatives from a civil engineering firm working for the OJC). Critically, the complaint fails to allege that the Village hired and used the planning firm "solely" to advance the OJC proposal – an element required for taxpayer standing under the Establishment Clause. *Altman*, 245 F.3d at 74 (explaining that plaintiffs could not establish municipal-taxpayer standing because there was "no evidence . . . that purchases of crayons, clay, or construction paper were made solely for the [religious in-school] activities that plaintiffs challenged"); *see also Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 794 (9th Cir. 1999) (holding that specific expenditures, like hiring a private security guard, do not trigger taxpayer standing when those "ordinary costs" are ones that the municipal defendant would have paid out anyway). To the contrary, it appears that the Village merely hired a private firm for general "planning services," a portion of which happened to include reviewing OJC's plans. J. App'x at 25 (Compl. ¶ 44).

Plaintiffs' theory of standing is therefore not materially different from the theories we rejected in *Altman*, in which the plaintiffs tried to invoke taxpayer standing because (1) a municipal school district's paid employees had spent time working on the challenged activities, and (2) the school district had spent money on school supplies that were used to complete those activities. *See Altman*, 245

10

F.3d at 74. But the mere fact that the work here was conducted by a private firm instead of a salaried employee is not enough to make a difference as far as taxpayer standing is concerned. Indeed, if Plaintiffs' theory were enough to trigger taxpayer standing, it "would allow any municipal taxpayer to challenge virtually any governmental action" whenever a municipality paid a private entity to assist in the work for even a minute of billed time. *Id.* Nor is it enough to assert that the invoices themselves confer municipal taxpayer standing. *See* Pls. Br. at 25 (arguing that standing exists because the Village spent "more than zero pennies" paying the invoices). In *Altman*, we expressly rejected the argument that expenditures for supplies like "cardboard, paper, and pipe cleaners" were enough to establish municipal taxpayer standing absent a showing that those "purchases were made *solely* for the activities that plaintiffs challenged." *Altman*, 245 F.3d at 60, 74 (emphasis added); *see also id.* at 57–58 (discussing other school supplies that were used). In other words, even if the municipality spent money to carry out the challenged activities, plaintiffs would still need to assert that the defendant made the expenditure "solely" to further the challenged conduct, *id.* at 74, as opposed to within the "ordinary" course of its budgeting, *Doe*, 177 F.3d at 794. Because Plaintiffs fail to allege as much here, they cannot invoke taxpayer standing.

11

## B. Direct-Harm Standing

The district court also properly determined that the Individual Plaintiffs failed to allege direct-harm (or direct-exposure) standing. *See Montesa*, 836 F.3d at 196 & n.8. In order to establish this type of standing, plaintiffs must allege that they are "directly affected by the laws and practices against which their complaints are directed." *Id.* at 196 (quoting *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 224 n.9 (1963)). As we have explained, direct-harm cases tend to occur in two different contexts. In so-called religious law cases, we have found standing where "a plaintiff is personally constrained or otherwise subject to control under a governmental policy, regulation, or statute grounded in a religious tenet or principle." *Id.* at 197 (internal quotation marks omitted). For example, a plaintiff would have direct-harm standing if he were denied a liquor license under a law that forbade alcohol sales within a certain distance from a church. *See id.* (citing *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 118 (1982)). Similarly, in so-called expression cases, we have found standing where "a plaintiff is personally confronted with a government-sponsored religious expression that directly touches the plaintiff's religious or non-religious sensibilities," *id.*, such as attending a state school that requires daily classroom prayer, *id.* (citing *Engel v.*

*Vitale*, 370 U.S. 421, 423 (1962)), or personally viewing a public display of the Ten Commandments on the grounds of a state capitol building, *id.* (citing *Van Orden v. Perry*, 545 U.S. 677, 682 (2005) (plurality opinion)).

Here, the Individual Plaintiffs fit into neither category. Even if we were to assume that the New Zoning Law "is grounded in or at least significantly influenced by a religious tenet or principle," the Individual Plaintiffs – who concede that they have no imminent building plans implicated by the New Zoning Law – offer no details in the complaint from which we can infer that they are "*personally* constrained or otherwise subject[ed] to control" under the law, or that they have suffered "*personalized* economic harm" as a result of it. *Montesa*, 836 F.3d at 196–97 (emphasis added and internal quotation marks omitted); *see also, e.g., In re Navy Chaplaincy*, 534 F.3d 756, 758, 763–65 (D.C. Cir. 2008) (Kavanaugh, *J.*) (holding that Protestant Navy chaplains lacked standing to challenge an allegedly pro-Catholic policy because the chaplains were exposed to only an incidental "message" of religious preference, as opposed to concrete economic harm or overt religious speech); *Flora v. White*, 692 F.2d 53, 54 (8th Cir. 1982) (holding that atheist plaintiffs lacked standing to challenge an allegedly discriminatory state

13

constitutional provision because the provision had never been applied to plaintiffs).

Furthermore, even if buildings used for worship and erected on private land pursuant to the New Zoning Law could constitute a religious expression or message promoted by the Village, the Individual Plaintiffs do not allege sufficient exposure to any such structures. *See Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489–91 (2d Cir. 2009) (finding standing where plaintiff alleged he had seen religious displays at his local post office); *Southside Fair Hous. Comm. v. City of New York*, 928 F.2d 1336, 1342 (2d Cir. 1991) (finding standing where plaintiffs' neighborhood had become "increasingly and substantially segregated on racial and religious grounds" (internal quotation marks omitted)).[2] Instead, the Individual Plaintiffs contend that they are at "imminent risk" of such exposure in the near future, presumably because religious organizations will soon make use of its provisions. Reply at 11–12. But even if that were true, Plaintiffs still fail to point to any planned

---

[2] Although a Jewish organization was allegedly allowed to build a religious structure in the immediate neighborhood of Individual Plaintiff Kogut between 2016 and 2018, that fact is irrelevant, as it concerns actions taken prior to the passage of the New Zoning Law in 2019. Relatedly, Plaintiffs' stray assertion in their appellate briefing that, as of 2021, "substantial expenditures" had been made to erect structures pursuant to the New Zoning Law – without information regarding the location of the structures – sheds little light on whether the Individual Plaintiffs have been personally exposed. Reply Br. at 12 n.7 (internal quotation marks omitted).

14

structure in particular that they will come into contact with. *See, e.g., Jewish People for the Betterment of Westhampton Beach v. Village of Westhampton Beach*, 778 F.3d 390, 394–95 (2d Cir. 2015) (finding standing where plaintiffs specifically alleged that they would be confronted with an already-planned religious display "on a daily basis" (internal quotation marks omitted)). Without such allegations, all Plaintiffs can assert is that someone may one day build a structure that Plaintiffs might eventually see. That is far too "conjectural or hypothetical" to support standing here. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).

## C. Denial-of-Benefits Standing

As for the Individual Plaintiffs' third and final theory of standing, we agree with the district court that they do not have denial-of-benefits standing. *See Montesa*, 836 F.3d at 195. As the Supreme Court has explained, "plaintiffs may demonstrate standing on the ground that they have incurred a cost or been denied a benefit on account of their religion." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 130 (2011). For instance, in *Texas Monthly, Inc. v. Bullock*, the Supreme Court held that when the availability of a tax exemption was conditioned on religious affiliation, the denial of that tax exemption to a nonreligious

15

entity – which had paid the tax under protest and sought a refund – sufficed for standing. *See* 489 U.S. 1, 7–8 (1989).

In an attempt to analogize their situation to that of the plaintiffs in *Texas Monthly*, the Individual Plaintiffs assert that, after the passage of the New Zoning Law, the Village's code allowed religious groups to avoid the costs of seeking certain special permits to hold larger gatherings, while the same procedures were not offered to nonreligious groups. But even if this were an accurate characterization of the Village's statutory scheme, the Individual Plaintiffs here – unlike those in *Texas Monthly* – have no personal interest in the purported benefit: there is no indication that any Individual Plaintiff has held a large gathering, "applied for a permit, or engaged in any other conduct that would implicate or invoke the operation of the challenged zoning laws." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83, 110 (2d Cir. 2019). Because Plaintiffs have not plausibly alleged that they have been (or imminently will be) denied the cost and procedural benefits afforded to religious groups under the New Zoning Law, there is no cognizable injury under Article III. *See Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 821 (7th Cir. 2014) ("[A]bsent any personal denial of a benefit, [the Individual Plaintiffs'] claim amounts to nothing more than

a generalized grievance."); *In re U.S. Catholic Conf.*, 885 F.2d 1020, 1025 (2d Cir. 1989) ("It [is] not enough to point to an assertedly illegal benefit flowing to a third party that happen[s] to be a religious entity.").

**D. Associational and Organizational Standing**

CUPON's theories of standing fare no better than those of the Individual Plaintiffs. *First*, CUPON argues that it has standing to sue on behalf of its members, a theory known as associational or representational standing. *See N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). An organization can establish this sort of standing by showing that (1) "its members would otherwise have standing to sue in their own right," (2) "the interests it seeks to protect are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006). CUPON asserts that the first prong is satisfied because the Individual Plaintiffs are members of CUPON and have taxpayer, direct-harm, or denial-of-benefits standing. But since we have already concluded that none of the Individual Plaintiffs has standing under any of those theories, CUPON's

17

derivative claims of associational standing must also fail. *See, e.g., Fac., Alumni, & Students Opposed to Racial Preferences v. N.Y. Univ.*, 11 F.4th 68, 76–78 (2d Cir. 2021).

*Second*, CUPON argues that it has organizational standing to sue on its own account, independent of its individual members. To assert such organizational standing, an entity must show that (1) it faces "an imminent injury in fact to itself as an organization (rather than to its members) that is distinct and palpable," (2) "its injury is fairly traceable" to the challenged conduct, and (3) "a favorable decision would redress its injuries." *Central de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (internal quotation marks omitted). The injury requirement is satisfied so long as the challenged action "perceptibly impaired" the organization's activities, as opposed to merely harming its "abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). We have made clear that an organization may suffer the requisite injury when it "diverts its resources away from its current activities" or otherwise incurs "some perceptible opportunity cost." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 129–30 (2d Cir. 2020) (internal quotation marks omitted). But when "an organization is not directly regulated by a challenged law or regulation, it cannot establish perceptible impairment absent an involuntary material burden on

18

[the] established core activities" by which its "organizational mission has historically been carried out." *Conn. Parents Union*, 8 F.4th at 173–75 (footnote and internal quotation marks omitted); *cf. Centro*, 868 F.3d at 121–22 (Jacobs, *J.*, dissenting) (noting that "[t]he crucial question [in organizational standing] is whether [the challenged ordinance] requires curtailing [the organization's] normal work," such that it "inflict[s] unbidden injury on [the organization] as an organization").

Here, the complaint merely alleges that "CUPON is a civic membership organization that advocates for, among other things, sensible and fair land use reform for all citizens of [the Village]," and that it hired "a professional planner" to help it oppose the New Zoning Law and urge the Village to adopt a comprehensive plan. J. App'x at 18, 21, 32 (Compl. ¶¶ 5, 26, 73). Without any additional facts concerning CUPON's regularly conducted activities and how those activities were necessarily and materially affected by the New Zoning Law, the allegations in the complaint fail to plausibly suggest that CUPON possesses organizational standing. *See Conn. Parents Union*, 8 F.4th at 175. In short, CUPON cannot establish standing simply because the New Zoning Law "touch[es] an[]

issue within the scope of its mission (which the organization itself . . . define[d])" and CUPON "expend[ed] resources to oppose that law." *Id.* at 173.

### III.  CONCLUSION

In sum, even if it could be argued that the challenged law improperly promotes religion, Plaintiffs point to no cognizable harm that is actual or imminent. They claim that the Village spent tax money in passing the law yet fail to allege how those funds were anything more than a routine use of the Village's planning budget. They suggest that the Village is now losing money by forgoing variance application fees but offer no facts suggesting that such applications had been made in the past or that they actually generated fees. They claim that they will be directly exposed to newly authorized religious structures without asserting that they have even seen one of those structures or when and where they might ever do so in the future. And while they contend that the law denies them the same opportunity as religious groups to host large gatherings, they do not assert that they have any particular interest in holding such events. Nor do Plaintiffs demonstrate any specific way in which their organization's usual operation was adversely impacted by the law's passage. Ultimately, even if Plaintiffs have a sincere objection to the challenged law, our Article III standing doctrine requires

20

them to first establish a real stake in their challenge before bringing it in federal court. Because Plaintiffs fall well short of that here, we **AFFIRM** the judgment of the district court.